**Robert J. COLONNA, Appellant**

v.

**Mary M. COLONNA, Appellee**

Superior Court of Pennsylvania.

Argued Sept. 5, 2001.

Filed Dec. 21, 2001.

---

Chris F. Gillotti, Pittsburgh, for appellant.

William J. Helzlsouer, Dravosburg, for appellee.

Before: DEL SOLE, President Judge, McEWEN, President Judge Emeritus, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE, STEVENS, MUSMANNO and ORIE MELVIN, JJ.

ORIE MELVIN, J.:

¶ 1 Appellant, Robert J. Colonna (Father), appeals from an Order directing him as custodian of his four children to pay child support to Appellee, Mary E. Colonna (Mother), the non-custodial parent. In light of the change in primary custody of the parties' children, he asserts the trial court's refusal to terminate his child support payments in its entirety constitutes a misapplication of the law regarding the right to child support. We find that under the circumstances of this case, Father is entitled to termination of child support payments to Mother. Therefore, we reverse the April 27th 1999 Order, which awarded the non-custodial parent child support.

¶ 2 The relevant facts and procedural history of this case are as follows. Mother and Father were married on August 27, 1983 and separated in 1996. The parties obtained a final decree in divorce on March 19, 1999. The parties' separation and divorce issues of custody, support and equitable distribution have resulted in protracted legal proceedings, numerous interim orders, final decisions and appeals. Of concern in the present appeal is the current child support order.

¶ 3 Four children were born of this marriage, two girls and two boys. The oldest child is now fifteen years old, and the youngest child is nine years old. Following separation of the parties, Father filed a petition for primary legal and physical custody of the children. During the pendency

of Father's custody petition, the parties consented to a temporary order for shared legal and physical custody, as the parties lived close to each other and to the childrens' school. Under the temporary consent order, the children spent three and one-half days per week with each parent. Subsequently, the parties amended the custody schedule so that the children alternated parental homes on a weekly basis.

¶ 4 In 1997, prior to the final custody determination, Mother also obtained an order for monthly support on behalf of the parties' four children. The order was based in large part upon the shared custody arrangement and Father's broad declaration that he was able to meet all of the children's financial needs and maintain two households. At the time, Father stipulated to an available net income of $85,942.00 per month. Father asserted reasonable needs in the amount of $12,839.00 per month while the children were in his custody.

¶ 5 Mother was assessed an earning capacity of $30,000.00 per year [1] and a net monthly income (including the earning capacity) of $4,607.00. The assessed monthly income was also based upon the assumption that Mother would take the standard IRS deduction, claim two children as exemptions, and file as head of household. Mother asserted reasonable needs for herself and the children in the amount of $28,208.00 per month; $21,106.00 represented that portion of the expenses and reasonable needs attributable to the children. Mother's estimate duplicated certain expenses listed by Father, which Mother did not want Father to control or pay directly. The Master eventually recommended that Father pay directly many of the expenses. In view of the expenses paid directly by Father and other expenses disallowed to either parent as exaggerated, the reasonable needs' assessment while in Mother's custody was reduced to $6,132.00 per month.

¶ 6 Pursuant to the ensuing support order dated November 19, 1997, the court directed Father to pay $6,132.00 per month in child support, plus arrearages in the amount of $49,259.00. Father was also ordered to provide all health insurance for Mother and the children, including one hundred percent of any unreimbursed portion of all health-related insurance claims. Additionally, the order required Father to repair the roof on the marital residence at a cost of $2,360.00. Father was further ordered to pay directly certain expenses related to the mortgage (interest only) on the marital residence (which was substantially encumbered); security systems; utilities; real estate taxes; property maintenance expenses; all property (homeowners and personal property) and automobile insurance; private school tuition; costs of after-school programs; camp expenses; dance and music lessons; and family memberships in various organizations and clubs.[2]

¶ 7 Meanwhile, the trial court named a custody evaluation expert and a case manager to assist the family. Following the custody hearings, by order dated May 4,

---

1. Mother has an undergraduate degree in American Studies and a master's degree in Business Administration (MBA) from the University of Pittsburgh. Since the birth of the parties' first child, Mother has been fully engaged as a parent and homemaker.

2. Father filed exceptions to this award. By order dated June 18, 1998, the trial court sustained Father's exceptions in part and reduced his child support payments to $5,132.00 per month. By order dated August 18, 1998, the court amended its June 18th order to include $12,000.00 of additional credits in Father's favor, further reducing Father's child support obligation to $3,132.00 per month.

1998, the trial court awarded primary legal and physical custody of the children to Father during the school year, and primary legal and physical custody of the children to Mother during the summer months. Mother also has partial custody of one or more of the children every Tuesday and Thursday during the school year. During the summer, Father has identical partial custody on Tuesdays and Thursdays. The parties now alternate weekends and holidays with the children throughout the year, and each parent is entitled to two weeks with the children as "summer vacation." The custody order makes clear that primary legal custody shifts between the parties and reposes with the party who has physical custody at any given time. Mother appealed from this custody order, and this Court affirmed. *Colonna v. Colonna,* 742 A.2d 1138 (Pa.Super.1999) (unpublished memorandum), *appeal denied,* 561 Pa. 685, 751 A.2d 183 (2000).

¶ 8 On July 24, 1998, Father moved to terminate his child support payments to Mother on the grounds that he was now the childrens' primary custodian and that, on the basis of the custody award, his monthly expenses had increased and his available monthly income had decreased. By order dated September 24, 1998, Father was permitted to amend his petition to include additional claims of material and substantial changes in circumstances. A hearing was scheduled for October 5th and 7th of 1998.

¶ 9 The hearing on Father's petition for support modification proceeded for two days before a Master. At the hearing, Mother argued that she had custody of the children forty (40%) percent of the year, when viewed as a whole. Father strongly contested this assertion, estimating that the children were with Mother approximately thirty (30%) percent of the time, while they spent about seventy (70%) percent of their time with him.

¶ 10 Both parties also testified that they were forced to sell personal securities to meet their financial obligations to the children. To sustain his claim of material and substantial changes, Father testified that his company's income had decreased due to changes in technology. According to Father's testimony, he had his company take a line of credit with a bank for $485,000.00, and he sold securities worth $204,000.00 to meet his support obligations. His interest income in the form of tax-free dividends in the amount of $30,000.00 to $40,000.00 was temporarily eliminated by virtue of the court's order placing in escrow $550,000.00 in municipal bonds, pending the ultimate determinations regarding the parties' pre-nuptial agreement. Father also re-invested 14 million dollars in his business, which further reduced his available income. Father admitted that he is the chief executive officer of his companies; and in 1996, he began to reduce his involvement in the company to four to five hours per week. Father maintained that his current salary of $175,000.00 was insufficient to meet his monthly obligations under the existing support order. Father presented evidence of living expenses and reasonable needs in the amount of $14,834.23 per month.

¶ 11 Mother offered the same reasonable needs' evidence that she had offered the year before, during the 1997 child support hearing. She testified that she did not know whether her costs had changed, incident to the new custody arrangement; but she maintained generally that the current dollar amount was equal to or greater than it was the year before, when the parties equally shared custody of the children. Because the final custody order was on appeal, the Master did not have the benefit

of the full record in the case, including the record from the previous support hearing.

¶ 12 Addressing the custody claim, the Master explained:

[Father] asserts that, pursuant to Judge Kaplan's May 4, 1998 order, [Mother] has custody 19% of the time during the school year and, if the children go to summer camp, 15% of the time in the summer, with camp time being credited to neither party.... [Mother] asserts that she has the children 40% of the time viewing the year as a whole.

The camp issue presents a very disturbing aspect of the case in that on the first day of trial both parents acknowledged that their children love summer camp, that they have historically gone to camp, and that the parents wanted them to go to camp in the summer of 1999. [Mother] had sent [Father] the camp application forms requesting that he pay a (non-refundable) camp deposit of $1,400. [Father] agrees to pay the entire cost of camp, estimated to be in excess of $7,000. On the second day of trial, [Mother] testified that, in spite of the fact that the children loved camp and that [Father] was paying all of the costs of camp, she was not going to send them to camp if it was not economically beneficial for her to do so. While the Master believes that [Father's] position of excluding the camp time from the custody of either party is correct, particularly since [Mother] is not paying for it, she does not want to give [Mother] a motive for depriving the children of camp. Therefore, she will include the camp time as [Mother's] custody time, giving [Father] every other weekend as is done in [Father's] school year calculation. The Master gives neither party "custody credits" for three hour visits after school.

* * *

Working from [Father's] Exhibit 5, the Master agrees that during the academic year [Mother] has 52 days and [Father] has 226 days. Modifying [Father's] Exhibit 8 as described above, [Mother] has 57 days and [Father] 29 days during the summer. This gives [Mother] a yearly total of 96 days, or 27%, and [Father] a yearly total of 255 days, or 73%. This is hardly *de facto*, nearly equally shared custody, nor is it unusual.

*See* Master's Explanation of Order, dated October 20, 1998, at 1–2.

¶ 13 Despite Mother's evidence that she no longer receives interest and dividend income of $456.00 per month, the Master also found that Mother's decrease in income was substantially offset by the stipend she receives on behalf of several student/ballerinas who now live in her home. The Master concluded that Mother's net monthly income/earning capacity was essentially unchanged. The Master also found that Father had demonstrated a substantial decrease in his available income from $85,942.00 per month to $16,130.00 per month, due mostly to significant business consolidations and re-investment. This conclusion was based solely on Father's testimony and his most recent federal individual tax return, which was admitted at the hearing over counsel's objection.

¶ 14 Nevertheless, the Master declined to terminate child support to Mother at that time, as Father advocated, because the Master was troubled by the continued disparity in the parties' income and Mother's continued fixed expenses incident to the exercise of her custody rights on alternating weekends and in the summer. The Master further stated that she could not

do a *Melzer*[3] calculation. Accordingly, the Master stated:

> [T]he Master can do no more than calculate the presumptive minimum that each [party] would owe to the other with [Father] at $16,130 per month and [Mother] at $4,600 per month.[4] Rule 1910.16–5(a)(2)[5] [of the Pennsylvania Rules of Civil Procedure] requires that the payor's income be set at $8,000 and the payee's income be set at $2,000, but this seems unfair to [Mother] because [the parties'] incomes are more disparate. Further, these children's expenses, in [Father's] house only, exceed the $2,830 per month figure, which results from a combined income of only $10,000. Using their actual incomes and the 28.3% for four children at $10,000 combined income level results in a child support obligation of $5,869 per month, of which [Mother's] share would be $1,291 per month or 22% and [Father's] would be $4,578 per month or 78%. Were [Mother's] obligation to [Father] to be for 12 months, she would owe $15,492 per year. However, [Father] has custody 73% of the time. Therefore, [Mother's] annual obligation would be $11,309.

> Were [Father's] obligation to [Mother] to be for 12 months, he would owe $54,936. However, [Mother] has custody 27% of the year. Therefore, [Father's] annual obligation would be $14,833. Offsetting one against the other leaves the support obligation of [Father] to [Mother] of $3,524 per year or $295 per month.

> The Master recommends that [Father] pay [Mother] child support of $294 per month while continuing to pay all of the children's expenses as set forth on his Exhibit 9.[6]

*See* Master's Explanation of Order, at 3–4. Father was also deemed entitled to a credit for overpayment in the amount of $56,655.00, due to the retroactive application of the Master's decision to May 4, 1998, and $30,046.00 in other credits, to be resolved at equitable property distribution. *See* Order dated October 20, 1998.

¶ 15 Both parties filed exceptions to these recommendations. Following a hearing on the exceptions, the trial court modified the Master's decision as follows:

> [T]he exception(s) of Mother are sustained in part and [Father] is ordered to pay $810.00 per month[7] for the support of four children. This order was calculated using the presumptive minimum under the new guidelines multiplied by

---

**3.** *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991(1984).

**4.** The Master utilized the support rules in effect in 1997, which extended coverage to children in families whose after-tax monthly income was $10,000.00 or less. The 1998 revisions to the guidelines (effective April 1, 1999) extended coverage to children in families whose after-tax family income is $15,000.00 or less. In view of the revised guidelines, however, the income of the parties in the present case would still compel a *Melzer* analysis.

**5.** "As part of the overall reorganization of the support rules, the provisions which formerly appeared in Rule 1910.16–5 have been moved

elsewhere." *See* Pa.R.C.P.1910.16–5 Explanatory Comment 1998.

**6.** Father's Exhibit 9 includes the detailed expenses he pays on behalf of the children. *See* N.T. Support Hearing, 10/7/98, Exhibit 9 Summary of Expenses; R.R. at 524a–527a.

**7.** The court increased the monthly support award to Mother because Father "had not filed for child support against [Mother] and I found that it was inappropriate to offset any child support due [Mother] by any amount that she would owe [Father]. Therefore, I awarded [Mother] child support based on the guidelines reduced to the percentage of her partial custody time." Trial Court Opinion, 6/30/00, at 2.

the percentage of Mother's custody time.

All other exceptions and cross-exceptions are dismissed and the temporary order dated October 20, 1998 as modified herein is made a final Order of Court.

Trial Court Order dated April 27, 1999, Certified Record at 305. The trial court granted reconsideration of this order on May 24, 1999, anticipating that the property division would soon be completed and certain decisions regarding property distribution may resolve related issues in the child support matter. *See* Trial Court Opinion, 6/30/00, at 1 n. 1. Neither the property distribution nor the reconsidered decision was resolved within 120 days of the order granting reconsideration.[8] *Id.* Thus, Appellant's requested relief was deemed denied, and he timely pursued this appeal.

¶ 16 On appeal Father presents one issue for our review, "Did the trial court err in failing to terminate [his] child support payments to mother in light of father's award of primary physical custody of the parties' four minor children?" Father's Brief at 14. In light of the trial court's use of the *Little*[9] methodology in calculating the instant child support award and the similarity in the financial disparity between the instant parties and those in *Diament*,[10] we decided it would be beneficial to elucidate the scope of this Court's holdings in those cases. Therefore, we granted *en banc* consideration and asked

the parties to also address the following issues:

(1) What, if any, child support obligations might a custodial parent owe a non-custodial parent and under what conditions these obligations might arise (*Little*); and

(2) What is the propriety of quashing an appeal from a child support order (*Diament*) in view of the longstanding rule that child support orders are immediately appealable?

¶ 17 As a preliminary matter we first address whether *Diament, supra* n. 10, is applicable. In *Diament*, the parties separated in 1993 with Father having primary custody and the sole financial responsibility for the parties' two minor children. In 1996, Mother initiated divorce proceedings and filed a separate petition for spousal support. The trial court awarded spousal support to Mother. In April 1998, Father petitioned for a decrease in his spousal support obligation and also filed a separate complaint for child support as the childrens' primary custodian. The change of circumstances alleged was Mother's receipt of a personal injury settlement in the amount of $343,857.33. In October 1998, Father also filed a petition to suspend health insurance coverage for Mother and an emergency petition to suspend spousal support. In July 1999, Mother filed a petition for modification of spousal support. The trial court consolidated all petitions for hearing. After adjudicating all matters the trial court entered an order granting Father's petition for modification

---

**8.** The 30–day time period for filing a notice of appeal runs anew from the date of entry of the reconsidered decision, or, if the court does not render a reconsidered decision, within 120 days, from the 121st day. *See* Pa.R.C.P.1930.2; *Weinzetl v. Weinzetl,* 452 Pa.Super. 271, 681 A.2d 813 (1996). In essence, the court has 120 days to render a reconsidered decision or the decision is

deemed a denial, and the appeal period commences.

**9.** *Little v. Little,* 441 Pa.Super. 185, 657 A.2d 12 (1995).

**10.** *Diament v. Diament,* 771 A.2d 793 (Pa.Super.2001).

of spousal support and dismissing his complaint for child support. The trial court also denied Father's petitions to suspend spousal support and health insurance coverage. Both parties filed timely appeals.

¶ 18 On appeal, a panel of this Court recognized that the child support entitlement issue was merely a red herring. Since Father had always been the primary custodian and due to his substantial income fully capable of meeting all of the childrens' financial needs, his pursuit of child support served only to lessen the amount of spousal support he was obligated to pay Mother. The panel found nothing in the record to indicate that the parties' children would suffer any financial hardship as a result of the trial court's denial of Father's request for what amounted to only a reduction in his spousal support obligation. Since there was no threat of any interruption of the maintenance already being provided to the children, the panel treated the dispute for what it was in actuality, that is a fight over the amount of spousal support. Consequently, the panel held that the various cross-appeals concerned only spousal support modification, and therefore were interlocutory given the parties' pending divorce complaint and absence of resolution of the economic claims. *Calibeo v. Calibeo*, 443 Pa.Super. 694, 663 A.2d 184 (1995).

¶ 19 While we might question the validity of this reasoning if applied in all cases involving both child and spousal support issues, in the present case, we see no need to overrule *Diament* because it is clearly distinguishable. Although the disparate incomes between the custodial Father and noncustodial Mother are analogous, the facts in *Diament* differ from this matter in one crucial respect. Here, we are asked to review an order involving only a claim of child support. Such an order constitutes a final order immediately subject to appeal. Mother admits that Father does not have any spousal support or alimony obligation because she previously waived this claim under the parties' 1983 prenuptial agreement. Moreover, a divorce decree has been entered and a final disposition has been made on all the economic claims. *Cf. Deasy v. Deasy*, 730 A.2d 500 (Pa.Super.1999), *appeal denied*, 562 Pa. 671, 753 A.2d 818 (2000) (finding a spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved). Here, we are not concerned with a spousal support order, and the fact that a portion of the equitable distribution order is pending appeal cannot serve to vitiate the finality of this child support order. Accordingly, we find *Diament* does not control this case.

¶ 20 We now focus our review on the merits of Father's contention and the scope of this Court's decision in *Little* on the obligation to pay support, if any, to a noncustodial parent.

■ ¶ 21 Our scope of review when considering appeals from support orders is narrow. *Gephart v. Gephart*, 764 A.2d 613 (Pa.Super.2000). "When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Laws v. Laws*, 758 A.2d 1226, 1228 (Pa.Super.2000) (quoting *Calabrese v. Calabrese*, 452 Pa.Super. 497, 682 A.2d 393, 395 (1996), *appeal denied*, 547 Pa. 722, 689 A.2d 230 (1997)).

We will not disturb a child support order absent an abuse of discretion, resting upon clear and convincing evidence. An abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judg-

ment exercised by the trial court is manifestly unreasonable.

*Kauffman v. Truett,* 771 A.2d 36, 37–38 (Pa.Super.2001) (quoting *Klahold v. Kroh,* 437 Pa.Super. 150, 649 A.2d 701, 703 (1994) (citations omitted)). "In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." *Humphreys v. DeRoss,* 737 A.2d 775, 777 (Pa.Super.1999) (*en banc*). Moreover, the party seeking a modification "has the burden of proving by competent evidence that a material and substantial change to the circumstances has occurred since the entry of the original or modified support order." *Soncini v. Soncini,* 417 Pa.Super. 393, 612 A.2d 998, 1000 (1992).

¶ 22 Father contends that material changes in circumstances have occurred since the amended support order entered on August 18, 1998, which entitle him to termination of his support payments to Mother. While Father also averred a decrease in income, he primarily asserts that since he is now the primary custodial parent his support obligation is being entirely met through direct expenditures on the childrens' behalf for food, shelter, clothing, transportation and other reasonable needs as contemplated by the support guidelines. Father also takes the position that his substantially higher income is irrelevant to the determination of which party is the obligor or obligee in a support action. Father concludes that the trial court's order requiring him to pay any amount to the noncustodial parent misapplies established

Pennsylvania law and should be reversed. We agree.

■ ¶ 23 We begin our analysis by noting that "[i]n Pennsylvania both parents share an equal responsibility for supporting their children and must be required to discharge their obligations in accordance with their capacity and ability." *Blaisure v. Blaisure,* 395 Pa.Super. 473, 577 A.2d 640 (1990) (citing *Michael v. Michael,* 360 Pa.Super. 312, 520 A.2d 473 (1987), *appeal denied,* 515 Pa. 623, 531 A.2d 431 (1987)); *Mooney v. Doutt,* 766 A.2d 1271 (Pa.Super.2001). The support guidelines, Pa. R.C.P 1910.16–1 through 1910.16–7, "were promulgated to provide minor children the same proportion of parental income that they would have received if the parents lived together." *Dalton v. Dalton,* 409 Pa.Super. 258, 597 A.2d 1192, 1194 (1991). Therefore, after a divorce, both parents retain this responsibility for their childrens' needs regardless of their custody arrangements. Although parents have a mutual duty to support their children, the child support guidelines contemplate child support payments be made by the noncustodial parent (obligor) to the custodial parent (obligee). *See* Pa.R.C.P.1910.16–1, Explanatory Comment B 2 [11]. Since the support guidelines apply to determine both spousal and child support the generic term "obligee" and "obligor" is used to identify the recipient and payor. Implicit in the application of the guidelines' methodology for determining an amount of child support is the recognition of which party is the "custodial" parent [12]. While

**11.** This Comment, in relevant part, provides: Each parent is required to contribute a share of the child's reasonable needs proportional to that parent's share of the combined net incomes. The custodial parent makes these contributions entirely through direct expenditures for food, shelter, clothing, transportation and other reasonable needs. In addition to any direct expendi-

tures on the child's behalf, the noncustodial parent makes contributions through periodic support payments.

**12.** As one commentator on the subject notes: "Child support is defined as court mandated, periodic transfers of money from a non-custodial parent to a custodial parent for the benefit of a minor child from a dissolved mar-

the support law does not define the term custodial parent, it is commonly understood to mean a parent who acts as the primary caregiver on a regular basis for a proportionally greater period of time. In most instances, the court can easily determine the custodial parent for purposes of child support by identifying which parent has physical custody of the child for a majority of time. Ordinarily, in order for one parent to be entitled to an award of child support from the other, that parent must be the custodial parent. Thus, the court must first ascertain which parent meets the criterion for custodial parent status and thus the obligee for purposes of child support.

▉ ¶ 24 Here, the trial court specifically found Father has physical custody of the children 73% of the time and the Mother the remaining 27% of the time. Our review confirms that the record supports this finding. Consequently, for purposes of child support Father is the custodial parent or obligee. As the custodial parent, he is the one entitled to receive child support each month from Mother.[13] Despite this factual finding, and the master's and trial court's acknowledgment of the inapplicability of *Little, supra* n. 9, the trial court nonetheless ordered Father to pay Mother monthly child support in the amount of $810.00. In making this award the trial court shared the master's concern over the parties' disparate income levels and merely offered the following generalization to support its decision:

> While the case of *Little v. Little*, 441 Pa.Super. 185, 657 A.2d 12 (1995), 'anticipates' that child support to the non

custodial parent would be limited to cases where the 'visitation' amounts to *de facto* shared custody, the principle that both parents must contribute to the support of their children requires a ruling in this case that father financially assist mother during her periods of partial custody. The methodology which I applied to determine the amount of father's contribution considers mother's income (and therefore **her** contribution) as well as the reduced time which mother has with the children. This is fully consistent with the public policy of this commonwealth [sic] to consider the best interests of children and to provide for their needs through child support.

Trial Court Opinion, 6/30/00, at 3. We find the trial court's stated reason that both parents must contribute to the support of their children, actually supports the opposite conclusion. The effect of the trial court's ruling is to exempt Mother from discharging most of her support obligation and force father to pay more than his fair share of this joint obligation. Mother has more than sufficient income/earning capacity to meet her share of the support obligation contemplated by this unequal, but not unusual, shared physical custody arrangement. *See Connor v. Connor*, 434 Pa.Super. 288, 642 A.2d 1136 (1994) (holding as a matter of law that mother's spending 27% of the time with the children is not unusual and does not warrant a reduction in her support payments to father); *see also*, Pa.R.C.P.1910.16–4(c) Explanatory Comment—1998 (stating "the Committee has designated 30% time as the routine [custody] arrangement....."). Conse-

riage." Robert Scott Merlin, 55 Wash. U.J. Urb. & Contemp. L. 317, 320 (1999) (citing D. Kelly Weisberg & Susan Frelich Appleton, Modern Family Law: Cases and Materials 729 (Aspen Law & Business 1998)).

**13.** We note, despite his entitlement Father has not sought child support from Mother. Furthermore, the question of whether or not an award directing Mother to pay child support under these circumstances would be sustained is not presently before this Court.

quently, we find this award runs contrary to our support law and therefore constitutes an abuse of discretion.

¶ 25 Both the Master's and the trial court's methodology fails to acknowledge that it is the custodial parent who provides shelter, clothing, education and recreation on a year round basis. Some or all of these costs continue even while the children are visiting with the non-custodial parent. Both also fail to fathom the significance of the fact that Father provides for the childrens' financial needs during the majority of the year, without any financial contributions of the mother to which he and the children are entitled. The guidelines indicate that the "custodial parent makes [support] contributions **entirely** through direct expenditures for food, shelter, clothing, transportation and other reasonable needs. In addition to any direct expenditures on the childrens' behalf, the non-custodial parent makes contributions through periodic support payments." *Supra,* n. 11 (emphasis added). The trial court's award ignored the fact that Father is the primary custodial parent and as such is considered to be the obligee for purposes of applying the guidelines' formula in order to determine the basic child support amount. Of even greater significance is the fact that Father's petition sought only to terminate payments to Mother and not to receive financial assistance from

Mother. Consequently, there was no need to engage in any calculation of the basic child support obligation, let alone convolute the calculation by treating Father as obligor. Thus, both the Master and the trial court erred in applying the guidelines as if Father was the obligor based solely upon his significantly higher earning potential.

¶ 26 Moreover, the master's and trial court's misplaced concern over the disparity in the parties' income caused both to overlook the fact that the income-shares method[14] used for calculating the parties' respective share of the joint obligation to their children already factors in the difference in their incomes. *See generally,* Explanatory Comment—1998 to rule 1910.16–1. The respective wealth of the custodial versus non-custodial parent does not change the manner in which each parent satisfies his or her share of the joint support obligation. The Comment to Rule 1910.16–1 makes it clear it is the primary custodial parent who meets his or her child support obligation **entirely** through direct expenditures on the children because they are residing primarily with that parent. It is the non-custodial parent who must meet his or her share of the support obligation through direct court-ordered payments to the other parent, which are calculated pursuant to the formula delineated in the guidelines. With one exception[15], not ap-

---

**14.** This method "involves the following three steps: (1) Income of the parents is determined and added together. (2) A basic child support obligation is computed based on the combined income of the parents. This obligation represents the amount estimated to have been spent on the children jointly if the household were intact. The estimated amount, in turn, is derived from economic data on household expenditures on children. A total child support obligation is computed by adding the actual expenses for work-related child care expenses and extraordinary medical expenses. (3) The total obligation is then pro-rated between each parent based on

his or her proportionate shares of income. The obligor's computed obligation is payable as child support. The obligee's computed obligation is retained and is presumed to be spent directly on the child. This procedure simulates spending patterns in an intact household, in which the proportion of income allocated to children depends on total family income." Merlin, *supra,* note 12, at 349.

**15.** *See* Pa.R.C.P.1910.16–4(c)(2), which provides in relevant part;

[W]hen the children **spend equal time** with both parents, the Part II formula cannot be

plicable here, the determination of "obligor" and "obligee" for purposes of child support is a function of time spent with the children, and not which parent has the higher income. Absent the conditions found in *Little*, there simply is no authority under either the guidelines or case law to support the award of child support payments to the non-custodial parent.

¶ 27 As for the *Little* case, we note that it does not stand for the general proposition that a custodial parent with a significantly greater income may be ordered to make child support payments to a less well-off non-custodial parent. The scope of the *Little* decision is strictly limited to its facts. In *Little*, a mother sought child support from the father, who had primary custody, for her periods of partial custody and visitation. A panel of this Court held:

> [W]here parents of minor children share custody to the extent that the noncustodial parent has the children for nearly fifty (50%) percent of the hours of each month and has, in addition, the entire responsibility for transporting the children to and from her home, their father's home, their schools and other activities; and where the 'primary' custodial parent's earnings or earning potential varies significantly from the other parent, child support may be ordered to be paid to the 'non-custodial' parent. **We would anticipate that such shared child support would be limited to cases such as this where the 'visitation' amounts to de facto shared custody and where the non-primary custodial parent is able to demonstrate regular, necessary and reasonable expenses incurred attendant to the visitation/custody.**

*Id.* at 16 (emphasis added). At the time *Little* was decided, the guidelines did not provide a formula for deviating from the basic support guidelines in shared custody arrangements. Thus, *Little*, much like *Melzer*, was a judicial response to a gap in the guidelines to provide a fair determination of support in situations of an equal or near equal shared custody arrangement where the custodial parent's earnings were significantly greater than that of the non-custodial parent. In fact patterns where the time spent with each parent is nearly a 50/50 split, it is impossible to identify a custodial parent because neither can be said to have physical custody for the majority of the time. Clearly, the instant case does not present such a fact pattern.

¶ 28 We further note that the facts of this case would not even entitle Mother to a reduction in her support payments, had she been so ordered to pay, because the time she spends with the children does not meet the 40% time threshold. The prior guidelines permitted a non-custodial parent's support obligation to be reduced only if that parent "spends an unusual amount of time with the children." *See* former Rule 1910.16–5(m). However, due to the inconsistency the courts experienced in defining what constitutes "an unusual amount of time," a new rule was promulgated. In December of 1998 our Supreme Court amended the guidelines to provide a formula for calculating child support in the context of shared custody. Effective April 1, 1999, Rule 1910.16–4(c) now allows a reduction in the noncustodial parent's support payment where that parent spends 40% or more time with the children. As the comment explains:

> Subdivision (c) sets forth the method for calculating the presumptively correct

---

applied unless the obligor is the parent with the higher income. In no event shall an order be entered requiring the parent with

the lower income to pay basic child support to the parent with the higher income.... (emphasis added).

amount of support in cases where the obligor spends a substantial amount of time with the children. The method is essentially this: when the obligor spends 40% or more time with the children, his or her percentage share of the combined basic support obligation is reduced by the percentage of time spent over and above the routine partial custody/visitation arrangement. For purposes of applying this method, the Committee has designated 30% time as the routine arrangement and 40% time as the level at which the parties' expenses begin to change significantly enough to warrant a reduction in the basic support obligation. When there is equal time sharing, subsection (2) reduces the support obligation further so that the obligor does not pay more than what is necessary to spread the parties' combined income equally between the two households.

Pa.R.C.P.1910.16–4 Explanatory Comment—1998. This rule reflects the review committee's acknowledgement that "there should be some reduction in the support obligation in these cases to reflect the decrease in the obligee's variable expenses and the increase in obligor's fixed and variable expenses as a result of the children spending substantially more time with the obligor." Pa.R.C.P.1910.16–1 Explanatory Comment—1998, C. 4.

■ ¶ 29 Consequently, on this record we conclude that Father cannot be required to make child support payments to Mother. The change of physical custody from a 50/50 time split to a 73/27 split in favor of Father constitutes a substantial change in circumstances necessitating a complete termination of Father's prior support payments to Mother. Further, we are not persuaded by Mother's argument that during the custody trial Father acknowledged his ability to meet all of the children's reasonable needs. By not seeking any financial assistance from Mother, he is in all practicality recognizing his ability to fulfill that commitment, thereby allowing her to use the money she may have been required to pay him on the childrens' needs while in her custody. Where primary physical custody is changed from one parent to the other parent, no valid justification remains for requiring the new custodial parent to continue payments that are intended to be purely for the support, benefit, and best interest of the children. Consequently, directing support payments to a non-custodial parent beyond the limited circumstances referenced above in *Little* serves no purpose for the children after custody changes and would only confer a personal benefit upon the non-custodial parent if the payments were allowed to continue.

¶ 30 Moreover, the support guidelines are the Legislature's response to the Federal Government's mandate that States establish mandatory guidelines for determining child support. *See* Introduction to the 1998 Explanatory Comment, Pa.R.C.P., Rule 1910.16–1, 42 Pa.C.S.A.; 42 U.S.C. § 667(a). This statute replaced a discretionary system and was enacted to create greater uniformity, predictability and equity in determining child support awards, while at the same time maintaining a degree of judicial discretion necessary to address unique circumstances. *See* Explanatory Comment—1998 to Rule 1910.16–1 (stating purpose of guidelines is to promote "(1) similar treatment of persons similarly situated, (2) a more equitable distribution of the financial responsibility for raising children, (3) settlement of support matters without court involvement, and (4) more efficient hearings where they are necessary."); *Ball v. Minnick,* 538 Pa. 441, 451–452, 648 A.2d 1192, 1197 (1994). Here, the trial court rejected the Legislature's chosen method for determining child

support, upset the statutory balance struck between predictability and flexibility, and returned to a discretionary approach for a whole class of cases. Accordingly, we reverse the Order directing father to pay $810.00 monthly in child support to Mother.

¶ 31 Order reversed.

¶ 32 President Judge Emeritus McEWEN, JOHNSON and FORD ELLIOTT, JJ., Concur in the Result.