J-S55019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH J. COTELLESE III | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LISA M. COTELLESE | : | |
| | : | |
| Appellee | : | No. 777 EDA 2018 |

Appeal from the Order Entered January 26, 2018
In the Court of Common Pleas of Bucks County
Domestic Relations at No: 2017 DR 1807 PACSES  No. 684116808

| | | |
|---|---|---|
| JOSEPH J. COTELLESE III | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LISA M. COTELLESE | : | |
| | : | |
| Appellee | : | No. 778 EDA 2018 |

Appeal from the Order Entered January 26, 2018
In the Court of Common Pleas of Bucks County
Domestic Relations at No: 2012 DR 00320 PACSES No. 201113141

BEFORE:  OLSON, STABILE, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                **FILED NOVEMBER 30, 2018**

J-S55019-18

Appellant, Joseph J. Cotellese III ("Husband"), appeals[1] from the trial court's January 26, 2018 support order. We affirm.

The trial court recited the pertinent facts and procedural history in its Pa.R.A.P. 1925(a) opinion:

> The parties have a long history of support litigation over the last six (6) years. On March 22, 2012, Lisa M. Cotellese [("Wife")] filed a complaint for spousal and child support against [Husband] for the parties' children [("Children")]. After appearing at a conference on May 4, 2012, an interim order was entered into the record setting [Husband's] monthly child support payments[.]
>
> [...]
>
> On August 16, 2017, [Husband] filed [a] petition for modification seeking a decrease in the monthly child support payments due to an alleged change in his employment status. On September 14, 2017, the parties consented to terminate the existing support order. The September 14, 2017 order recognized an overpayment in the total amount of [$4,642.24], representing [$4,365.24] in total case balance overpayment and [$270.00] which [Wife] owed [Husband] for her health insurance contribution. [Husband] thereafter filed his "petition to collect support overpayment in terminated case[.]"
>
> [Husband's] petition was followed by [Wife's] filing of a new petition for child support. [...]
>
> A hearing was held on January 25, 2018. The court heard testimony from [Wife], [Husband], and Kathleen Murray, the HR generalist from [Husband's] former employer. The court recited on the record that as established at the December 7, 2017 conference, [Husband's] net monthly income was determined by the officer to be [$5,035.52] based on his gross monthly income

---

[1] Husband filed his appeal more than thirty days after entry of the order, but the docket fails to reflect that Husband received notice of the entry of the order pursuant to Pa.R.C.P. No. 236. Rule 108(b) of the Rules of Appellate Procedure provides that the date of entry of an order for purposes of appeal is the date on which the local clerk sends the Rule 236 notice. Pa.R.A.P. 108(b). We will therefore treat this appeal as timely.

of [$6,500.00]. The court also placed on the record the finding at the conference that [Wife's] net monthly income was [$4,100.00] based on annual gross income of [$67,000.00]. The parties also stipulated that they have equal physical custody of the Children[,] and Wife pays the Children's health insurance at a monthly cost of [$94.90].

[Husband] testified at the hearing that he was employed with AWeber until August 15, 2017 when his employment terminated. [Husband] further testified that his biweekly paycheck was [$6,388.47]. [Husband] agreed that his gross annual income for 2017 was [$166,000.00]. [Husband] testified that following his termination from AWeber he worked eight (8) hours per week as a consultant for a company called LUXTECH which he obtained, through a firm called Trajectify. [Husband] testified he is a 1099 employee for the consulting job, receiving monthly gross income of [$5,200.00] per the consulting agreement with Trajectify. [Husband] stated that per the consulting agreement, Trajectify would receive twenty percent (20%) and he received eight percent (80%) of the consulting client payments and that such agreement would terminate twelve (12) months from November 2017. [Husband] testified that he received additional income in the amount of [$99.00] in 2017 from working with clients on his own side project known as 'Sharey,' an online marketing tool for social media marketing.

[Husband] testified that as of the time of the hearing, he was working with Trajectify contracts for two (2) clients, LUXTECH and Club OS, and was also working with this second client through Sharey. [Husband] further explained to the court how Sharey was developed and how it works. The record before this court established that [Husband] started his Sharey project prior to his employment termination with AWeber and that [Husband] had to shut down Sharey for a period of time at the request of AWeber.

Trial Court Opinion, 5/2/18 at 1-5 (record citations and some capitalization omitted).

The trial court assigned Husband an earning capacity of $82,091.15, concluding that Husband was capable of working more than eight hours per week, and that Husband was making insufficient efforts to obtain full-time

employment.  The trial court also ordered Husband's $4,642.24 overpayment to Wife to be liquidated in accord with Pa.R.C.P. No. 1910.19(g)(1).[2]

"The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion."  ***Portugal v. Portugal***, 798 A.2d 246, 249 (Pa. Super. 2002).  A parent's child support duty is absolute, and the goal is to promote the children's best interests.  ***Samii v. Samii***, 847 A.2d 691, 694 (Pa. Super. 2004).  Further,

> *(1) Voluntary Reduction of Income.*  When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.
>
> […]
>
> (4) *Earning Capacity.*  If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity.  Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to

---

[2]  That Rule provides:

> If there is an overpayment in an amount in excess of two months of the monthly support obligation and a charging order remains in effect, after notice to the parties as set forth below, the domestic relations section shall reduce the charging order by 20% or an amount sufficient to retire the overpayment by the time the charging order is terminated.

Pa.R.C.P. No. 1910.19(g)(1).

- 4 -

be assessed, the trier of fact must state the reasons for the assessment in writing or on the record.

Pa.R.C.P. No. 1910.16-2(d)(4).

Instantly, the trial court found that Husband failed to seek full time employment after his termination from AWeber. Trial Court Opinion, 5/2/18, at 9-10. Instead, he worked approximately eight hours per week as a consultant. Father testified that he had been reaching out to his network, but that he had not met with any recruiters or sent out any resumes in an attempt to procure full time employment. N.T. Hearing, 1/25/18, at 51-52.

The trial court reasoned:

> It is this court's determination from examining the record, assessing the witness(es) and considering the evidence and testimony presented that [Husband] possesses the availability, necessary physical health conditions, work experience, intelligence, mental ability, job skills and employment history to secure employment more suitable to an earning capacity as assessed by this court, and not the lower amount he currently derives from his eight (8) hours per week consulting work. [Husband] has not shown any effort to actively secure full-time employment. [Husband] admitted he did not complete any job applications, did not have any job interviews and was not working with any headhunters.

Trial Court Opinion, 5/2/18, at 11. Furthermore, the record indicates that the trial court chose to liquidate Husband's overpayment pursuant to 1910.19(g)(1) because a charging order is presently in effect, despite the termination of a prior support order.

We have reviewed the parties' briefs, the applicable law, the record, and the trial court's opinion. We conclude that the trial court's May 2, 2018 opinion

accurately addresses Husband's assertions of error. We affirm the order based on the reasoning set forth in the trial court's opinion, and we direct that a copy of that opinion be filed along with this memorandum.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/18

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
### DOMESTIC RELATIONS SECTION

| | | |
|---|---|---|
| LISA M. COTELLESE | : | No. 2012-DR-00320 |
| | : | |
| | : | PACSES: 201113141 |
| v. | : | |
| | : | 778 EDA 2018 |
| | : | |
| JOSEPH J. COTELLESE, III | : | CONSOLIDATED |

| | | |
|---|---|---|
| JOSEPH J. COTELLESE, III | : | No. 2017-DR-01807 |
| | : | |
| | : | PACSES: 684116808 |
| v. | : | |
| | : | 777 EDA 2018 |
| | : | |
| LISA M. COTELLESE | : | CONSOLIDATED |

### OPINION

Appellant, Joseph J. Cotellese, III ("Father"), appeals to Pennsylvania Superior Court from the Support Orders entered by this Court on January 26, 2018 establishing monthly payments for the support of the parties' two (2) children. After review of these matters, the Superior Court consolidated the appeals. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), we now file this Opinion in the above-captioned matters in support of the Court's ruling.

### I. BACKGROUND

The parties have a long history of support litigation over the last six (6) years. On March 22, 2012, Lisa M. Cotellese ("Mother") filed a Complaint for Spousal and Child Support against Joseph J. Cotellese ("Father") for the parties' children A.C. (date of birth: November 1, 2003) ("Child 1") and A.C. (date of birth: June 2, 2006) ("Child 2") (hereinafter collectively "Children"). After appearing



for a conference on May 4, 2012, an Interim Order was entered into the record setting Father's monthly Child Support payments at One Thousand Six Hundred Eighteen Dollars ($1,618.00). The Order also indicated that as of the date of the hearing, Father owed Three Thousand Four Hundred Forty-Nine Dollars and Twelve Cents ($3,449.12) in arrears which was "due in full IMMEDIATELY." In order to satisfy the monthly payments, multiple wage attachments were issued to Father's then employer. On June 15, 2012, the parties appeared for a hearing before the Honorable Alan M. Rubenstein. Judge Rubenstein signed a final Order setting Father's monthly payments for the support of Mother and the Children at Two Thousand Six Hundred Forty-Three Dollars ($2,643.00), allocated at One Thousand Four Hundred Seventy-Five Dollars ($1,475.00) for Child Support and One Thousand One Hundred Sixty-Eight Dollars ($1,168.00) for Spousal Support.

On September 25, 2012, Mother petitioned the Court for a modification of the existing Support Order requesting an increase in the monthly payments based on her new employment at a salary less than the earning capacity previously assigned to her several months earlier. The parties appeared for a second hearing on January 22, 2013 and reached an agreement which was entered as an Order of Court. According to the January 22, 2013 Order, Father was to pay monthly Child and Spousal Support in the amount of Two Thousand Five Hundred Seventy-Nine Dollars ($2,579.00). Several months later, Father filed a Petition for Modification of that Order on May 7, 2013. In the Petition, Father requested a decrease due to circumstances resulting in a reduction of his income. In the June 25, 2013 Order, the Court entered the third Support Order in this case finding Father's monthly net income had decreased to Two Thousand Two Hundred Seventy-Eight Dollars and Fifty-Three Cents ($2,278.53) and therefore a reduction in Child and Spousal Support to the amount of Five Hundred Ninety-Four Dollars ($594.00) was ordered. Father was further ordered to pay the prior arrears of Two Thousand Six Hundred Seventy Dollars and Twenty-Two Cents ($2,670.22) immediately.

2

Several months later, on September 20, 2013, Mother filed a Petition for Modification requesting reinstatement of Spousal Support and seeking an increase in the monthly Child Support payments due to Father's improved employment status. A modified Order was entered on October 30, 2013 assessing Father's monthly net income at Eight Thousand Two Hundred Sixty Dollars and Thirteen Cents ($8,260.13), and ordering Father to pay monthly Child and Spousal Support in the amount of Two Thousand Nine Hundred Fourteen Dollars ($2,914.00) and arrears set at Three Thousand Fifteen Dollars and Eighty-Five Cents ($3,015.85) to be paid immediately.

On February 28, 2014, the Court held its third hearing in less than a year and issued a final Order setting Father's monthly Child and Spousal Support payments at Two Thousand Six Hundred Forty-Nine Dollars ($2,649.00) and to pay monthly arrears at the rate of ten percent (10%), or Two Hundred Sixty-Five ($265.00). Subsequently, on April 21, 2016, the Court issued an Order increasing the monthly arrears payment to Five Hundred Thirty Dollars ($530.00) and on January 17, 2017, the Court issued an Order terminating Spousal Support per the Property Settlement Agreement signed by the parties on December 14, 2016.

On August 16, 2017, Father filed another Petition for Modification seeking a decrease in the monthly Child Support payments due to an alleged change in his employment status. On September 14, 2017, the parties consented to terminate the existing Support Order. The September 14, 2017 Order recognized an overpayment in the total amount of Four Thousand Six Hundred Forty-Two Dollars and Twenty-Four Cents ($4,642.24), representing Four Thousand Three Hundred Sixty-Five Dollars and Twenty-Four Cents ($4,365.24) in total case balance overpayment and Two Hundred Seventy-Seven Dollars ($270.00) which Mother owed Father for her health insurance contribution. Father thereafter filed his "Petition to Collect Support Overpayment in Terminated Case" and a new

docket number of 2017-DR-01807 was issued for that Petition.   Father's case for overpayment collection was consolidated with the original docket number 2012-DR-00320.

Father's petition was followed by Mother's filing of a new Petition for Child Support. A review conference was held on December 7, 2017 before the assigned Domestic Relations Officer with both parties present and represented by legal counsel.  An agreement could not be reached based on the income information provided and the matter was thereafter scheduled for a hearing before this Court on January 25, 2018.  Following that conference, Mother filed a Petition to Reinstate the Child Support Order against Father under docket number 2012-DR-00320.

A hearing was held on January 25, 2018.  The Court heard testimony from Mother, Father, and Kathleen Murley, the HR generalist from Father's former employer, AWeber Systems, Inc. ("AWeber").  The Court recited on the record that as established at the December 7, 2017 conference, Father's net monthly income was determined by the officer to be Five Thousand Thirty-Five Dollars and Fifty-Two Cents ($5,035.52) based on his gross monthly income of Six Thousand Five Hundred Dollars ($6,500.00).   The Court also placed on the record the finding at the conference that Mother's net monthly income was determined by the officer to be Four Thousand One Hundred Dollars ($4,100.00) based annual gross income of Sixty-Seven Thousand Dollars ($67,000.00) from her current employer, Refrigeration Air Conditioning, as the parties stipulated (N.T. 01/25/2018, p. 24).  The parties also stipulated they have equal physical custody of the Children as fifty/fifty (50/50), and Mother pays the Children's health insurance at a monthly cost of Ninety-Four Dollars and Ninety Cents ($94.90) (N.T. 01/25/2018, p. 24).

Father testified at the hearing that he was employed with AWeber until August 15, 2017 when his employment terminated (N.T. 01/25/2018, pp. 34, 63).  Father further testified that his bi-weekly paycheck was Six Thousand Three Hundred Eighty-Eight Dollars and Forty-Seven Cents ($6,388.47)

4

(N.T. 01/25/2018, p. 34). Father agreed that his gross annual income for 2017 was One Hundred Sixty-Six Thousand Dollars ($166,000.00) (N.T. 01/25/2018, p. 34). Father testified that following his termination from AWeber he worked eight (8) hours per week as a consultant for a company called LUXTECH which he obtained, through a firm called Trajectify (N.T. 01/25/2018, p. 35). Father testified he is a 1099 employee for the consulting job, receiving monthly gross income of Five Thousand Two Hundred Dollars ($5,200.00) per the consulting agreement with Trajectify (N.T. 01/25/2018, pp. 35, 37). Father stated that per the consulting agreement, Trajectify would receive twenty percent (20%) and he received eighty percent (80%) of the consulting client payments and that such agreement would terminate twelve (12) months from November 2017 (*See* N.T. 01/25/2018, p. 39). Father testified that he received additional income in the amount of Ninety-Nine Dollars ($99.00) in 2017 from working with clients on his own side project known as "Sharey", an online marketing tool for social media marketing (N.T. 01/25/2018, pp. 39-40).

Father testified that as of the time of the hearing, he was working under Trajectify contracts for two (2) clients, LUXTECH and Club OS, and was also working with his second client through Sharey (N.T. 01/25/2018, pp. 40-42). Father further explained to the Court how Sharey was developed and how it works (N.T. 01/25/2018, 43-44). The record before this Court established that Father started his Sharey project prior to his employment termination with AWeber and that Father had to shut down Sharey for a period of time at the request of AWeber (N.T. 01/25/2018, p. 63).

At the conclusion of the hearing the matter was taken under advisement. This Court issued its decision as set forth in the January 26, 2018 Child Support Order which is the subject of this Appeal. The Order stated: Father to pay Eight Hundred Fifty Two Dollars ($852.00) per month for the support of two (2) Children. The Court also ordered that Children's health care coverage would

5

be provided by Mother. The Order noted that after conducting the hearing and based on all testimony and evidence presented, the Court determined Father's annual earning capacity based on his prior history and the record in the case was Eighty-Two Thousand Ninety-One Dollars and Fifteen Cents ($82,091.15). The Order also noted the Court's consideration of the fact that both parties continue to enjoy a fifty/fifty (50/50) custody arrangement of the Children, and that the parties share child care expenses for Child 2. This Court issued a separate Order on January 26, 2018 under docket number 2017-DR-01807 that Father's Petition for Recovery of Overpayment is granted and dismissed as same had been considered and addressed and ordering the case to close.

On March 5, 2018, Father filed his Notice of Appeal to the Superior Court appealing the January 26, 2018 Child Support Order. On March 26, 2018, this Court ordered Father to file a Concise Statement of Errors which he has done. On March 28, 2018, Mother filed a Motion to Quash Appeal, which was denied by the Superior Court on April 20, 2018. The Court now files this Opinion in support of its ruling.

## II.    STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

On March 26, 2018, this Court issued an Order pursuant to Pa.R.A.P. 1925(b) directing Father to file of record and serve on the undersigned a Concise Statement of Errors Complained of on Appeal within twenty-one (21) days of the date of this Order. The Order also directed that "any issue not properly included in the concise statement shall be deemed waived."

On March 27, 2018, Father filed a Concise Statement of Errors Complained of on Appeal, set forth *verbatim* herein:

> 1. Whether the trial court abused its discretion in holding [Father] to an earning capacity, rather than using [Father's] actual income to determine child support.

6

2. Whether the trial court abused its discretion when it precluded from evidence testimony relating to [Mother's] financial condition and ability to repay [Father's] $4,642.24 overpayment.

## III. DISCUSSION

The Superior Court has continuously held that the standard of review in child support cases is:

> The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground.

Kessler v. Helmick, 672 A.2d 1380, 1382 (Pa. Super. 1996) (citation omitted).

"An abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." Kersey v. Jefferson, 791 A.2d 419, 423 (Pa. Super. 2002) (citations omitted).

Father initially argues that this Court abused its discretion when it based Father's monthly Child Support payments on his earning capacity rather than on his actual income. It is well established under Pennsylvania law that "both parents are equally responsible for the support of their children." Klahold v. Kroh, 649 A.2d 701, 703 (Pa. Super. 1994). The Superior Court of Pennsylvania has continuously noted that "the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." Samii v. Samii, 847 A.2d 691, 694 (Pa. Super. 2004) (*quoting* Depp v. Holland, 636 A.2d 204, 206 (Pa. Super. 1994)).

7

The Court routinely emphasizes in support hearings that it has long been determined under Pennsylvania law "[t]he determination of a parent's ability to provide child support is based upon the parent's earning capacity rather than the parent's actual earnings." Laws v. Laws, 758 A.2d 1226, 1229 (Pa. Super. 2000). Child support payments are awarded based on guidelines using the parties' monthly net income. Pa.R.C.P. 1910.16-2. "Where a party voluntarily assumes a lower paying job, there generally will be no effect on the support obligation." Pa.R.C.P. 1910.16–2(d)(1). If a party "willfully fail[s] to obtain or maintain appropriate employment," support payments may be set based upon the party's earning capacity. Pa.R.C.P. 1910.16-2(d)(4).

An earning capacity is the amount a party could realistically earn under the circumstances. Haselrig v. Haselrig, 840 A.2d 338, 340 (Pa. Super. 2003). Earning capacity is the amount a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, earnings history and child care responsibilities. *See* Woskob v. Woskob, 843 A.2d 1247 (Pa. Super. 2004). Among the factors that must be considered when determining a party's earning capacity are age, education, training, work experience, health and earning history. Pa.R.C.P. 1910.16-2(d)(4). A court may also consider other factors, such as jobs available within a certain occupation and the effort a party has exerted to find employment. Id. Generally, a party's earning capacity will not be altered if he or she "voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause." Pa.R.C.P. 1910.16-2(d)(1).

"The fact-finder is entitled to weigh the evidence presented and assess its credibility." Green v. Green, 783 A.2d 788, 790 (Pa. Super. 2001). After examining the record and evaluating all testimony and evidence presented to this Court, the Court properly based Father's monthly Child Support payments on an assessed earning capacity of Eighty-Two Thousand Ninety-One Dollars and Fifteen

8

Cents ($82,091.15). Father testified he was employed with AWeber until August 15, 2017 when his employment was terminated (N.T. 01/25/2018, pp. 34, 63). Importantly, Father testified that his gross wages for 2016 were One Hundred Sixty-Four Thousand One Hundred Eighty-Three Dollars ($164,183.00) (N.T. 01/25/2018, p. 33). Father testified that his bi-weekly pay from AWeber in 2017 was Six Thousand Three Hundred Eighty-Eight Dollars and Forty-Seven Cents ($6,388.47) resulting in a 2017 annual pay rate of One Hundred Sixty-Six Thousand Dollars ($166,000.00) (N.T. 01/25/2018, p. 34).

Father was terminated from AWeber on August 15, 2017 (N.T. 01/25/2018, p. 63). Father was subsequently denied unemployment benefits (N.T. 01/25/2018, p. 35). Since his termination of employment with AWeber, Father has been working as a consultant through a consulting firm called Trajectify (N.T. 01/25/2018, p. 35). Father's consulting work commenced November 1, 2017, and was based on a three-month agreement, ending January 2018 (N.T. 01/25/2018, p. 36). The record is clear that Father works approximately eight (8) hours weekly in his current capacity as a consultant (N.T. 01/25/2018, pp. 50-51). Father testified:

> **By Ms. Fineman:**
> **Q** So based on your testimony thus far today, other than the 20 hours you spent, in the last week or two, on this new project with Club OS, your consulting contracts are generally between eight hours per week, and then Club OS, once somebody is hired, will be 30 minutes per week. Is that correct?
> **A** Once somebody's hired, correct.

(N.T. 01/25/2018, pp. 50-51).

The record also established that Father was not actively seeking full-time employment (N.T. 01/25/2018, p. 51). Father stated:

9

**By Ms. Fineman:**

Q   And what efforts have you made to obtain full-time employment?
A   Well, part of what I'm doing with Trajectify and, you know, I think it speaks to the way the agreement was written, that 12 months after the period I would be no longer obligated to pay Trajectify money, is to figure out ways to continue to work with the existing companies in a larger capacity.

In addition to that, I mean, you know, I found the Trajectify work by reaching out to my network. I mean, that's the way -- you hit a certain level in your career and the best way to find new work is to connect with people face to face, you know, rather than, like, a Monster.com-type board. So, you know, I've been, you know, reaching out to people in my network, having conversations, having a lot of coffee to try to find additional work.

(N.T. 01/25/2018, p. 51).

Father further confirmed he has not formally sought full-time employment with another employer like he had with AWeber:

**By Ms. Fineman:**

Q   Have you applied for any other jobs?
A   I have not filed, like, a formal job application with other companies.
Q   Have you had any other -- any interviews for jobs?
A   I had -- no, no other interviews.
Q   Have you worked with any headhunters?
A   I generally avoid working with headhunters because when I've tried working with them in the past, they just haven't gotten me any valuable positions.
Q   Do you have any other substantive leads for full-time employment other than the work that you're currently doing with Trajectify?
A   Not currently. Well, I mean -- and Club OS.
Q   Club OS is through Trajectify, though. Correct?
A   Again, like, I -- you know, I pitched them specifically. You know, like, I was introduced to the CEO of Club OS I think back in October, November, and then I saw a potential opportunity with them. And then I actively pursued, you know, pitching them as a consultant.

(N.T. 01/25/2018, pp. 51-52).

This Court recognizes Father did not voluntarily depart from his job with AWeber and that there is a dispute between the parties as to whether or not Father was terminated for cause. Regardless

10

of that determination, the Court properly concluded Father's current earning capacity is simply not commensurate with what he earned at AWeber. It is this Court's determination from examining the record, assessing the witness(es) and considering the evidence and testimony presented that Father possesses the availability, necessary physical health conditions, work experience, intelligence, mental ability, job skills and employment history to secure employment more suitable to an earning capacity as assessed by this Court, and not the lower amount he currently derives from his eight (8) hours per week consulting work. Father has not shown any effort to actively secure full-time employment. Father admitted he did not complete any job applications, did not have any job interviews and was not working with any headhunters.

Under Pennsylvania law, parents have an absolute obligation to support their children and this obligation "must be discharged by the parents even if it causes them some hardship." Mencer v. Ruch, 928 A.2d 294, 297 (Pa. Super. 2007). Based on the evidentiary record and Pennsylvania law, the Court properly found that Father failed to obtain appropriate employment despite being an educated, experienced and intelligent man in good health. The Court holds Father is capable of securing full-time employment to earn income higher than his current consulting and appropriate to his actual earning capacity in order to allow him to meet his monthly Child Support payment obligations. For these reasons, the Court properly concluded that Father should be assessed an earning capacity of Eighty-Two Thousand Ninety-One Dollars and Fifteen Cents ($82,091.15) gross annually. This is not the amount of One Hundred Sixty-Six Thousand Dollars ($166,000.00) he earned annually at AWeber, but is more than what he currently earns annually from his limited consulting work and his start-up Sharey project.

Father next argues that the Court abused its discretion when it precluded from evidence testimony relating to Mother's financial condition and ability to repay Father's overpayment in the

11

amount of Four Thousand Sixty Hundred Forty-Two Dollars and Twenty-Four Cents ($4,642.24). This Court finds Father's contentions are without merit. Father will obtain credits against this amount for his Child Support obligation as established herein.

At the commencement of the January 25, 2018 hearing, both parties stipulated Mother's annual gross income is Sixty-Seven Thousand Dollars ($67,000.00) from Refrigeration Air Conditioning and such conclusion was based on her paystubs (N.T. 01/25/2018, p. 24). The parties also stipulated they share equal physical custody fifty/fifty (50/50) of the Children (N.T. 01/25/2018, p. 24). Additionally, the parties agreed Mother pays health insurance for the minor Children at a monthly cost of Ninety-Four Dollars and Ninety Cents ($94.90) (N.T. 01/25/2018, p. 24). Furthermore, Mother testified at the hearing and Father was given ample opportunity to cross-examine Mother and offer any documents into evidence (*See* N.T. 01/25/2018, pp. 26-29). Nothing in the record indicates this Court denied Father the opportunity to introduce any testimony and/or exhibits to support his case in this regard.

"It is within the discretion of the trial court to determine, under all the circumstances, what is just and equitable." Hartley v. Hartley, 528 A.2d 233, 235 (Pa. Super. 1987). Rule 1910.19(g)(1) states, in pertinent part:

> [i]f there is an overpayment in an amount in excess of two months of the monthly support obligation and a charging order remains in effect, after notice to the parties as set forth below, the domestic relations section shall reduce the charging order by 20% or an amount sufficient to retire the overpayment by the time the charging order is terminated.

Pa.R.C.P.1910.19(g)(1).

In reaching its decision, the Court duly considered all evidence submitted into the record and all witnesses' testimony and credibility thereof at the hearing. The Court notes the September 14, 2017 Order established an overpayment owed to Father in the total amount of Four Thousand Six

12

Hundred Forty-Two Dollars and Twenty-Four Cents ($4,642.24), representing Four Thousand Three Hundred Sixty-Five Dollars and Twenty-Four Cents ($4,365.24) in case balance overpayment and Two Hundred Seventy-Seven Dollars ($270.00) which Mother owed Father for health insurance contribution toward offset for the month of September 2017. The January 26, 2018 Order states in part "[s]hould there be an overpayment on the account, it is to reduce by 20% per PaRCP 1910.19 9(g)(1)." The Court's Order further indicated "[t]he sum of $4365.24 is to be reinstated as a credit to be liquidated as stated above." Additionally, per the January 26, 2018 Order, Mother is obligated to provide the Children's health care coverage and Mother is responsible to pay the first Two Hundred Fifty Dollars ($250.00) annually per Child for any unreimbursed medical expenses. The Court granted Father's request for recognition of his overpayment and, therefore, Father's contentions with respect to the application or disposition of that overpayment credit are meritless.

Finally, at the conclusion of the January 25, 2018 hearing, the parties articulated to the Court their stipulation to Father's overpayment issues and how it is going to be liquidated:

> **THE COURT**: I see the analysis that there was extra -- I think I incorporated that into the record. Does mother disagree that there was an overpayment?
> **MS. FINEMAN**: No. There's a Consent Order as part of Your Honor deciding how that's going to be liquidated.
> **THE COURT**: So there's no dispute as to overpayment.

(N.T. 01/25/2018 p. 93).

The Court finds that Father is capable of gaining full-time employment more appropriate with the earning capacity assigned by the Court and that his efforts to meet his Children's support obligations and his general overall financial well-being would be better served in that manner, rather than the cost and expense of protracted litigation.

13

## IV. CONCLUSION

Based upon the foregoing reasons, this Court finds Father's Appeal is without merit. The Court's Support Order should be affirmed for the reasons set forth hereinabove.

BY THE COURT:

JEFFREY G. TRAUGER, JUDGE

Date: May 2, 2018

14