**Agnes I. SAMII, Appellant,**

v.

**Hossein D. SAMII, Appellee.**

Superior Court of Pennsylvania.

Submitted Nov. 19, 2003.
Filed April 7, 2004.

James S. Sorrentino, Lancaster, for appellant.

Leonard Dubin, Philadelphia, for appellee.

Before: TODD, BENDER and BECK, JJ.

OPINION BY BENDER, J.:

¶ 1 Agnes I. Samii (Mother) appeals from an order that dismissed her petition for the modification of child support for her and Hossein D. Samii's (Father) daughter on the basis that no material or substantial change in circumstances occurred since the entry of the existing support order. Mother's issues concern: (1) the trial court's determination that the change in circumstances was to be measured from a 2002 support order rather than a 1999 order, (2) the assigning of an earning capacity to Mother, (3) the increase in child care expenses, (4) the court's failure to allow Mother to testify at a later time, and (5) the court's failure to allow Mother to call Father as a witness as on cross examination. For the reasons that follow, we affirm.

¶ 2 This matter commenced with Mother's October 7, 2002 filing of a petition to modify child support. Based on the evidence presented at a hearing held on March 4, 2003, the trial court set forth the following recitation of the facts as they relate to the issues raised by Mother:

Agnes I. Samii ("Mother") and Hossein D. Samii ("Father") were married on September 16, 1989, separated on July 14, 1998 and divorced in December of 2001.

There was one child born of this marriage, Alexa Samii ("Alexa"), date of birth August 23, 1996. Since the parties' separation, Alexa has lived with Mother and sees Father on a regular partial custody schedule.

Both parties are dentists. Father is an endodontist who maintains a practice in Lancaster County, PA. Mother is an orthodontist who practiced in Lancaster until she voluntarily stopped working entirely in July of 2002 in order to stay home full time with six year old Alexa. She has not worked since. Alexa is now in first grade, attending school from 8:30 until 3:00 daily. When Mother worked, Alexa was cared for by a nanny who left in May of 2000 to have a child. After the nanny left, Mother cut back her work hours so as to be at work when Alexa was in school or at Father's.

Mother had earned $80,847.00 in 1999, the year before she started to cut back on her work hours preparatory to stopping work. She now claims to be without earning capacity, on account of a covenant not to compete in her employment contract and her inability to find a job close enough to Lancaster to pick her daughter up after school. She has made some informal inquiries of some nearby dentists about possible employment. She claims that expenses for the reasonable needs of the child have increased from $62,620 in 1999 to $81,645 annually.

According to his federal income tax returns, Father earned $780,458.11 in 2001 and $654,402.24 in 2002.

A support Order was entered on May 10, 1999, providing for child support of $4,000.00 monthly and spousal support of $6,000.00. On November 7, 2001, the parties entered into a Property Settlement Agreement ("PSA"), which provided, in part, that child support would be $4,000 per month and that Mother could not request a modification of that amount for one year from November 1, 2001. The document provided for no alimony for Mother.

On March 18, 2002, by agreement of the parties, the May 10, 1999 order was modified. The new order did not con-

tain the spousal support obligation, but the $4,000 child support figure was retained. On October 7, 2002, Mother filed a request for a modification of the child support on the grounds of her decreased earnings, Father's increased earnings, and Alexa's increased expenses. The conference hearing officer listed the matter for a complex hearing which was held on March 4, 2003. On March 20, 2003, the Court declined to modify the March, 2002 Order on the grounds that there had been no material and substantial change in circumstances. Trial Court Opinion (T.C.O.), 5/23/03, at 1–3. Based upon the above findings, the trial court dismissed Mother's petition for modification of child support, holding that no material or substantial change in circumstances occurred since the entry of the March 18, 2002 order.

¶3 Mother now appeals to this Court, raising the following issues for our review:

A. Whether the lower court erred in relying upon the March 18, 2002 modification to the support order of May 10, 1999, rather than the actual support order of May 10, 1999, in determining if there had been a material and substantial change in circumstances warranting an increase in child support payments from [Father ?]

B. Whether the lower court erred in ascribing earning capacity to [Mother ?]

C. Whether the lower court erred by failing to consider the increase in child care expenses that [Mother] has had to assume [?]

D. Whether the lower court committed harmful error by denying [Mother] the opportunity to testify at a later date concerning the increases in child care expenses that have occurred since issuance of the March 18, 2002 modification to the support order of May 10, 1999[?]

E. Whether the lower court abused its discretion by refusing to allow [Mother's] counsel to call [Father] as on cross examination to testify concerning [Father's] additional earning power [?]

Mother's brief at 4.

¶4 Initially, we note that the court in *Laws v. Laws*, 758 A.2d 1226 (Pa.Super.2000), set forth the following to guide our review of a support order:

"When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Calabrese v. Calabrese*, 452 Pa.Super. 497, 682 A.2d 393, 395 (1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. *Id.* An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. *Depp v. Holland*, 431 Pa.Super. 209, 636 A.2d 204, 205–06 (1994). *See also Funk v. Funk*, 376 Pa.Super. 76, 545 A.2d 326, 329 (1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. *Depp*, 636 A.2d at 206.

*Laws*, 758 A.2d at 1228 (quoting *Humphreys v. DeRoss*, 737 A.2d 775, 776–77 (Pa.Super.1999), *rev'd on other grounds*, 567 Pa. 614, 790 A.2d 281 (2002)).

¶5 Mother first argues that the trial court erred in measuring from the

March 18, 2002 support order and not from the original May 10, 1999 support order to determine whether a material or substantial change in circumstances had occurred to allow for an increase in child support. Specifically, because in the 2002 order the amount of child support remained the same and was based upon the agreement of the parties, Mother contends that the 1999 order still applies.

¶ 6 In responding to this issue, the trial court stated that "[f]ailure to change the amount of support ordered does not necessarily mean that the prior order remains in effect. It means that the amount specified in the prior order was deemed to be appropriate for th[e] new order." T.C.O. at 4. We agree with the court's reasoning and note that the portion of the parties' PSA entered as a support order for the child specifically states that "[t]his is a Modification of the Order of Court entered May 10, 1999." Order of Court, 3/18/02. Obviously, if Mother believed that the $4,000 per month amount provided in the 1999 order was insufficient in 2002, she would not have agreed to the same amount. Moreover, whether the amount of the order was arrived at after a hearing or by way of an agreement between the parties is of no moment. The most recent order is the one that is pertinent to the determination of whether a change in circumstances has occurred. *See Commonwealth ex rel. Sladek v. Sladek,* 386 Pa.Super. 490, 563 A.2d 172 (1989). Accordingly, Mother's first issue is without merit.

¶ 7 The next two issues Mother raises pertain to the trial court's alleged failure to properly consider Mother's earning capacity and the increased expenses for the parties' child. In this regard, we note initially:

When modification of a child support order is sought, the moving party has the burden of proving by competent evidence that a material and substantial change of circumstances has occurred since the entry of the original or modified order. The lower court must consider all pertinent circumstances and base its decision upon facts appearing in the record which indicate that the moving party did or did not meet the burden of proof as to changed conditions.

*Id.* at 173. *See also Capuano v. Capuano,* 823 A.2d 995, 1003 (Pa.Super.2003) (discussing the petitioner's burden of establishing entitlement to support); *Soncini v. Soncini,* 417 Pa.Super. 393, 612 A.2d 998, 1000 (1992) (providing that "a [c]ourt may only modify an existing support award when the party requesting the modification shows a material and substantial change in circumstances since the [o]rder was entered"); 23 Pa.C.S. § 3105(b) (stating that "[a] provision of an agreement regarding child support ... shall be subject to modification by the court upon a showing of changed circumstances").

¶ 8 Mother's petition alleged a change in circumstances based on an increase in Father's income,[1] a decrease in her income, and an increase in the child's expenses. Specifically, Mother's second issue deals with her decrease in income, which she asserts came about because of her termination when the orthodontics practice she had worked for part-time hired a full time orthodontist. She also contends that she was unable to secure

---

1. At the hearing on March 4, 2003, Father's accountant, David Michaels, testified that Father's income had decreased over $75,000 from 2001 to 2002. Mr. Michaels' testimony was supported by copies of Father's income tax returns. Mother did not rebut this information, and the court found that Father's income did not increase between March 18, 2002 and the date of the hearing.

alternate work due to her employment agreement that barred her from practicing for 24 months within a ten mile radius of her former employer's office. She also argues that employment opportunities are limited because of her child's school schedule and her need to provide transportation. Therefore, Mother contends that the court erred by assigning a earning capacity to her rather than recognizing that she no longer has actual earnings.

¶ 9 We note that "[t]he determination of a parent's ability to provide child support is based upon the parent's earning capacity rather than the parent's actual earnings." *Laws*, 758 A.2d at 1229. Moreover, it is well established that "both parents are equally responsible for the support of their children." *Klahold v. Kroh*, 437 Pa.Super. 150, 649 A.2d 701, 703 (1994). As an aid to our review, we scrutinize the trial court's discussion in connection with Mother's earning capacity issue. Citing *Singleton v. Waties*, 420 Pa.Super. 184, 616 A.2d 644 (1992), for the proposition that a court must focus on the parent's earning capacity rather than actual earnings, the trial court discussed the evidence it heard, recognizing that it "may make an exception to the rule that a parent is obligated for support when a parent chooses to stay home with a minor child, no matter what the parent's earning capacity." T.C.O. at 5. The court also noted it must consider the "the age and maturity of the child, the availability of others who might assist the parent, the adequacy of available financial resources if the parent stays at home, and finally, the parent's desire to stay home and nurture the minor child." *Id.* (quoting *Singleton*, 616 A.2d at 647). The court then related the facts it considered in arriving at its decision to assign an earning capacity to Mother rather than to award support based on the fact that Mother had no actual earnings.

In the instant case, the [c]ourt will not relieve Mother of her support obligation. Alexa is six years old, healthy and in school for the better part of the day. She does not need the kind of care a toddler might require. Mother's main chores in relation to the child seem to be chauffeuring her to school and her various activities, in addition to volunteering for several hours a week at the child's school. If Mother were to work, her income as well as Father's child support and contribution to child care would certainly easily cover the cost of hiring someone to care for Alexa after school. It is apparent that if Mother continues to stay at home, she has no money available to her except the child support which at $4,000 would not cover the expenses she has presented to the Court.

Finally, it is clear that Mother has not always wanted to be Alexa's full time parent. For the first several years of Alexa's life, a nanny cared for her while Mother worked. Mother did not fire the nanny because she desired to care for Alexa herself. On the contrary, she made the decision to stay home *only* when the nanny left to have a child in May of 2000, and she did not fully retire until the child was almost ready to start school. In August of 2000, three months after the nanny left, Mother cut back her employment hours to correspond to the times that Alexa was either in school or at her father's. Then when her employers found a replacement in July of 2002, she stopped work altogether, despite the fact that Alexa was starting school and would still be at her father's house at least one weekday each week. Mother has not provided the Court with convincing evidence that she is sincerely committed to her decision to stay at home with Alexa.

The Court finds it disturbing that Mother placed herself in this situation with full knowledge of the ramifications of her actions. She was well aware that she would be limited to the existing amount of child support when she relinquished her employment income in July of 2002, since she willingly signed a Property Settlement Agreement on November 7, 2001, which document provided her with no alimony. Thus, the divorce in December of 2001, resulted in the loss of her $6,000 monthly spousal support. She knew that there was a restrictive covenant in her employment contract when she resigned. Yet despite the fact that she was going to have limited income, her testimony does not show a serious effort to find new employment outside of the restricted area, even for times that Alexa was not in her care. Mother's situation is the result of her own bad choices. She may have been anticipating that her child support would be increased to a sufficient level to support her lifestyle, but that anticipated result has not come to be. Mother has the choice to work or not to work. But this court will not excuse her from participation in her daughter's support.

Mother's tax returns show that she made $81,800 in 1999, the year before she started to cut back her hours, preparing to leave employment. She has provided no satisfactory reason why she should not continue to earn at least that amount upon a return to work. The Court therefore believes that that figure represents a reasonable earning capacity, and finds that in March of 2002 Mother had an earning capacity of at least $81,800, which continues up to the current time. In short, while Mother's actual earnings have decreased, Mother's earning capacity remains at least

the same as when the support order was entered.

T.C.O. at 5–7.

¶ 10 It is apparent that the trial court did not believe Mother's assertions that she was involuntarily terminated and/or was seeking employment to mitigate the situation. In fact, the trial court clearly indicated that Mother placed herself in her present circumstances by making some ill-advised decisions. Since "[t]he fact-finder is entitled to weigh the evidence presented and assess its credibility," *Green v. Green*, 783 A.2d 788, 790 (Pa.Super.2001), *appeal denied*, 569 Pa. 707, 805 A.2d 524 (2002), we cannot conclude that the trial court abused its discretion in considering Mother's earning capacity rather than accepting her lack of actual earnings. This Court is bound by its standard of review and must sustain a support order if it can be upheld on any valid ground. *Laws, supra.* Accordingly, we are compelled to find Mother's second argument without merit.

¶ 11 Mother's third argument concerns her allegations that the needs of the parties' child have increased. A part of this argument rests on Mother's contention that the trial court improperly precluded evidence that pertained to alleged increases in child care expenses that occurred prior to the March 18, 2002 modification order. Furthermore, with acknowledgment that the documentation she wished to submit into evidence covered the period from the May 10, 1999 order, Mother also argues that if given additional hearing time on a later date, "she could have provided a more precise record of these expenses," *i.e.*, for the period since March 18, 2002. Mother's brief at 23.

¶ 12 The trial court addressed Mother's contention that the child's expenses have increased as follows:

The third component of Mother's assertion of changed circumstances is that

expenses for the child have increased to $81,645 per year from $62,620. That increase, however, spans the time from March of 1999 until the present, and the expenses accrued in the three years from 1999 to 2002 are not relevant to this case. It was Mother's burden to establish by competent evidence a material and substantial change in expenses from the entry of the last modified order. *Soncini, supra.* Mother's comparison of her 1999 expenses to her current expenses through use of Plaintiff's Exhibits 9 and 10 is not adequate proof of an increase during the past year. Lacking a schedule of expenses for March of 2002, Mother instead testified that tuition at the child's private school had increased from $5,000 to $7,300. The child's horseback riding lessons had increased from once to twice a week, for a cost differential of $45 per week. Additionally, Alexa now takes swimming lessons three times a week at a cost of $10 per session and requires a pool membership for $300 per year. Mother believes that the child requires an additional $100 per month for clothing. She also claims that the taxes for her New Jersey house had increased, as had the costs of garden care at the Lancaster house, but she was unable to specify the amount of those increases. Mother presented no documentation for any of the claimed increases and the Court cannot consider vague statements about increases in taxes and gardening costs as competent evidence. Mother testified that her financial situation was so bad that she had to cut back on lunches out with friends, stop her yoga study and color her hair at home instead of having it done at a salon. (N.T. 69) These relatively minor budgetary restraints do not prove the dire circumstances Mother claims as a result of the increased costs of raising her daughter, and the Court cannot treat them as indicative of serious financial difficulties.

The Court has concerns about the allocation of Alexa's expenses on the schedules submitted by Mother as well as whether certain listed items can be said to be reasonable expenses for the child. Mother has taken what she calls 'common expenses' and divided them equally between her and the child. Such a division of all of the expenses of the family into equal parts is not permissible. *Fitzgerald v. Kempf,* 805 A.2d 529 (Pa.Super.2002). As a result of Mother's allocation, the Court has no accurate figures for which portions of the common expenses can be attributable to the child. Additionally, there are items on the expense schedules which clearly should not be attributed to the child. The Court has serious reservations about certain of the gardening expenses, or about pay for the cleaning lady. It is not clear why the expenses for replenishing towels, sheets and carpets for a total of $2,000 per year should be in that category. Doubts also arise pertaining to flood insurance, detailing of the car, expenses and taxes pertaining to the shore house, pet care, and the like. None of these are reasonable expenses for the child. Without these costs, the totals contained on Plaintiff's Exhibit 9 would be drastically reduced. As a result of these difficulties, the Court has little, if any, competent evidence before it to indicate that Alexa's expenses have increased materially and substantially, and finds that Mother has not proven a change of circumstances in this regard.

T.C.O. at 7–9.

¶ 13 Again we recognize that the trial court, as the finder of fact, may weigh the evidence and determine credibility. *Green, supra.* Our review reveals that the

trial court did not abuse its discretion in categorizing the evidence and/or the lack thereof. Here, as the trial court explained above, Mother listed items that, without more, do not appear to be reasonable expenses for the child. Thus, we again find Mother's argument unavailing.

¶ 14 Mother next argues that the trial court erred in refusing to allow her to testify further at another time after the court ruled that conditions prior to the March 2002 order would not be considered in its determination as to whether or not a change in circumstances had occurred. Mother asserts that she was forced to testify in "an *ad hoc* fashion concerning her 2002 expenses, since exhibits of these expenses had not been prepared." Mother's brief at 23. Mother relies on *Capuano, supra* to support her allegation that the trial court committed reversible error by not scheduling another hearing date. We do not find *Capuano* determinative. In *Capuano,* the appellant had requested a *de novo* hearing, but was precluded from introducing any evidence at all. *Id.* at 1003. Here, Mother had her opportunity but was unprepared to provide the necessary evidence to support her allegations of a change in circumstances. Moreover, since the conduct of a trial is within the discretion of the trial court, this Court will not reverse absent an abuse of discretion. *In the Interest of J.M.,* 438 Pa.Super. 409, 652 A.2d 877, 882 (1995). Mother has failed to persuade this Court that the trial court abused its discretion by disallowing her more time to prepare evidence. It was her burden as the moving party to prove by competent evidence that the child's expenses had increased since the entry of the last order. *Sladek, supra.* Furthermore, Mother's attorney admitted at the hearing that he was unprepared to prove that circumstances had changed since 2002. N.T., 3/4/03, at 56. Accord-

ingly, we conclude that under the circumstances the trial court did not abuse its discretion by refusing to continue the matter to allow further testimony in regard to Mother's expenses for 2002.

¶ 15 Mother's final issue concerns the trial court's refusal to allow her to call Father as a witness as on cross examination. Citing *Shuster v. Shuster,* 226 Pa.Super. 542, 323 A.2d 760 (1974), Mother contends that with regard to a petition for modification of support, "a court may consider other assets (*e.g.* income from rental properties, IRA accounts, money market accounts, mutual funds) that may not appear on a tax return." Mother's brief at 24. Therefore, because the court did not permit Mother to call Father as a witness to explore other possible income, Mother claims the court abused its discretion.

¶ 16 The trial court provided the following explanation for its decision to deny Mother's request:

Father's only witness was his accountant, David Michaels, who testified at length and was duly cross-examined by Mother's counsel. He testified first, out of order, and provided extensive information about Father's income for 2001 and 2002, corroborated by Father's tax returns and various financial schedules. Mother then presented her case, which consisted only of her testimony. Nowhere in that testimony did Mother suggest that Father's income as presented by Mr. Michaels was incorrect. She did not suggest he had alternative avenues of income of any sort. After her testimony, her counsel rested his case by informing the court twice that he had no further witnesses and asking for admission of his Exhibits. (N.T. 89). Only then did counsel ask to call Father as if on cross examination, telling the court that he believed he had the "right to explore his [Father's] income, expenses,

et cetera." (N.T. 90). The court disagrees. What Mother's counsel sought to do, in the absence of any facts showing that Father's income was not as presented, was to participate in a deposition-like examination in the hope of finding something of advantage to his case. This request for Father's testimony was clearly an afterthought. In the absence of [a] specific reason, such as some indication that Mr. Michael[']s testimony was inaccurate or incomplete, it is not appropriate to reopen [the] case for the purpose of a random exploration of Father's financial affairs in the hope of showing that his income had increased substantially.

T.C.O. at 11.

¶ 17 "Admission or exclusion of evidence is within the sound discretion of the trial court." *Kersey v. Jefferson,* 791 A.2d 419, 425 (Pa.Super.2002). "We may reverse only if the trial court clearly abused its discretion or committed an error of law." *Id.* We are not convinced by Mother's argument that the court abused its discretion in refusing to allow Mother to call Father as if on cross, after indicating to the court that she had no more witnesses. Mother had the opportunity to fully question Father's accountant. Clearly, we are aware that a court may consider assets that do not appear on a tax return. However, Mother's attempt to call Father after indicating that she had no more witnesses and then being unable to articulate a more concrete reason ("right to explore other income, expenses, etc." N.T. at 90) is insufficient as a basis upon which to require Father to testify. Father's accountant, Mr. Michaels, provided testimony about Father's finances and Mother had the opportunity to cross examine him. Accordingly, we conclude that the trial court did not abuse its discretion in denying Mother's request to call Father as on cross examination.

¶ 18 Order affirmed.