J-A29002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.M.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.F. | : | |
| | : | |
| Appellant | : | No. 462 WDA 2021 |

Appeal from the Order Entered March 16, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-17-009381

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED:**FEBRUARY 8, 2022**

M.F. (Father) appeals from the March 16, 2021 order that dismissed the exceptions filed by Father to the hearing officer's recommendations relating to child support paid to M.M.F. (Mother) for the support of the parties' eleven year old child, A.F. (Child).[1]  After review, we affirm.

The trial court provided the following factual and procedural history of this matter, stating:

> The parties were married on July 1, 2006[,] and separated on July 31, 2017.  They were divorced on September 12, 2019.  The parties entered a Consent Order settling economic claims on September 10, 2019.  This settlement agreement included a PACSES Order including child support, payments for [] [C]hild's dance lessons, and alimony, for a total of $4,342 [per month].

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court's order states that "Father's exceptions and Mother's [c]ross [e]xceptions are dismissed, and the [h]earing [o]fficer's November 6, 2020, [r]ecommendation shall become a final order."  Trial Court Order, 3/16/2021.

The PACSES Order was entered in October 2019. On February 14, 2020, Father filed a petition to modify his child support payment. A hearing on the modification was held on October 8, 2020, and the [h]earing [o]fficer issued his recommendations on November 6, 2020.

In his recommendations, the [h]earing [o]fficer found that Mother has a monthly net income of $5,220, and Father has a monthly net income of $14,081. He recommended that Father pay $3,215.88 per month in child support plus $325 in arrears, retroactive to February 14, 2020. Father also pays Mother $1[,]000 per month in alimony, which end[ed] in September 2021. Father's total monthly payment is $4,215.88 plus 73% of [] [C]hild's unreimbursed medical expenses and other agreed upon expenses.

In his explanation, the [h]earing [o]fficer noted that Mother, although on sabbatical from her job as a teacher, was assigned her usual income of $5,220 per month pursuant to Pa.R.C.P. 1910.16-2(d)(1). He also found that she credibly testified that day[ ]care … for [] [C]hild, who is completing her schooling remotely due to the pandemic, would cost $2,800 per month, and included that in his calculation.

Both parties then filed exceptions. On March 16, 2021, this court dismissed the exceptions and made the [h]earing [o]fficer's recommendations a final order.

Trial Court Opinion (TCO), 6/7/2021, at 1-2 (citations to the record omitted).

Father filed this appeal and raises the following issues for our review:

1.     Was it error for the [t]rial [c]ourt to direct that Father pay for day care costs when Rule 1910.16-6(a) only allows the [c]ourt to make the payor **pay for expenses actually paid**?

2.     Even if the [t]rial [c]ourt were correct in assessing the payment of the fictional day[ ]care expense, the retroactivity of the matter was to 2/14/2020 and, therefore, was it error to assess the day[ ]care payment for the 6.5 months between the modification retroactive date and the date Mother went on [s]abbatical?

Father's brief at 4 (emphasis in original).

Initially, we note that when reviewing a child support order, we are guided by the following well-settled standard:

> "When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." **Calabrese v. Calabrese**, … 682 A.2d 393, 395 ([Pa. Super.]1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. **Id**. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. **Depp v. Holland**, … 636 A.2d 204, 205-06 ([Pa. Super.]1994). **See also Funk v. Funk**, … 545 A. 2d 326, 329 ([Pa. Super.] 1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. **Depp**, 636 A.2d at 206.

**McClain v. McClain**, 872 A.2d 856, 860 (Pa. Super. 2005) (quoting **Samii v. Samii**, 847 A.2d 691, 694 (Pa. Super. 2004)).

Moreover, we recognize that

> child support is a shared responsibility requiring both parents to contribute to the support of their children in accordance with their relative incomes and ability to pay. **Depp** … 636 A.2d at 208 … (citing **DeWalt v. DeWalt,** 365 Pa. Super. 280, 529 A.2d 508 (1987)). "Where a party voluntarily assumes a lower paying job, there generally will be no effect on the support obligation." Pa.R.C.P. 1910.16-2(d)(1). … Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P. 1910.16-2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities. **Id.**

> ***Kersey*** [***v. Jefferson,*** 791 A.2d 419, 423 (Pa. Super. 2002)].
> ***Accord DeMasi v. DeMasi,*** … 530 A.2d 871, 877 (Pa. Super.
> 1987) (holding that "[a] parent's ability to pay support is
> determined primarily by financial resources and earning
> capacity…. The obligation of support, then, is measured more by
> earning capacity than by actual earnings.")

***Portugal v. Portugal***, 798 A.2d 246, 249-50 (Pa. Super. 2002)

In his first issue, Father questions "whether it was proper for Father to be ordered to reimburse Mother for fictional child care expenses[.]" Father's brief at 7. Specifically, Father contends that the trial court incorrectly "charged the Father for child[ ]care expenses which [] Mother did not and will not, in fact, incur." ***Id.*** To support this argument, Father relies on language contained in Pa.R.C.P. 1910.16-6(a), which states, in pertinent part:

> **(a)** **Child care expenses.** Reasonable child care expenses paid
> by the parties, if necessary to maintain employment or
> appropriate education in pursuit of income, shall be
> allocated between the parties in proportion to their monthly
> net incomes.

Father emphasizes the "paid by the parties" language, indicating that only child[ ]care expenses that were actually incurred can be included in the calculation of the child support due. Thus, Father contends that the case should be remanded with directions to the trial court to credit Father $1,639.22 per month for the time period between February 14, 2020, through August 16, 2021, when Mother was not incurring child care costs due to her sabbatical leave.

In response to this argument by Father, the trial court stated:

**B. Child[ ]care Costs.**

Father next alleges that it was unreasonable for the [h]earing [o]fficer to find Mother's testimony regarding child[ ]care costs credible. Under **Samii**, the [h]earing [o]fficer, as the fact-finder, "is entitled to weigh the evidence presented" and assess the credibility of witnesses and evidence. **Samii, supra**. Here, Mother testified that the cost of hiring someone to take care of … [C]hild for 8.5 hours 5 days per week while … [C]hild completes her remote schooling and [M]other would be at work, would be $2,800. Per **Samii**, it was within the [h]earing [o]fficer's discretion to weigh Mother's testimony and to find Mother's testimony credible as to the cost to provide child[ ]care.

**C. Child [ ] care Costs Under Pa.R.C.P. 1910.16-6(a).**

Father next takes issue with the fact that the child[ ]care expenses are not actually incurred by Mother because she is home with … [C]hild after taking a sabbatical from her work. However, the [h]earing [o]fficer did not take Mother's sabbatical into account and instead assigned her a full-time earning capacity. When determining earning capacity, the court is required to consider several factors. **Morgan v. Morgan**, 99 A.3d 554, 558 (Pa. Super. 2014). Under Pa.R.C.P. 1910-16.2(d)(4), these factors that must be considered are the "[a]ge, education, training, health, work experience, earnings history and <u>child care responsibilities</u>." Pa.R.C.P. 1910.16-6(a) states that "the trier-of-fact <u>shall</u> allocate reasonable child care expenses paid by the parties, if necessary to maintain employment." Here, the [h]earing [o]fficer assigned Mother her full-time earning capacity, treating her as if she was working full time. In determining Mother's earning capacity, the [h]earing [o]fficer considered Mother's actual work experience and earnings history along with child care responsibilities necessary for her to maintain employment. The [h]earing [o]fficer accepted as credible … Mother's testimony as to the cost of the child care and the reason why the child care would be required. As finder of fact, the [h]earing [o]fficer was entitled to weigh Mother's evidence and accept its credibility. **Samii, supra**. Pursuant to Pa.R.C.P. 1910.16-6(a), the hearing officer allocated the reasonable child care expenses that would have been necessary for Mother to maintain employment[,] as the sabbatical was voluntary and the hearing officer applied a full time earing capacity to Mother. Pa.R.C.P. 1910.16-6(d)(1). Here, it would not be equitable to

> treat Mother as if she has a full time ear[n]ing capacity for one part of the calculation but then deny her the child care costs that would be necessary for her to incur to maintain full time employment for the other part of the calculation. The [h]earing [o]fficer did not abuse his discretion in allocating the child care costs that would be necessary for Mother to incur to maintain full time employment.

TCO at 5-6 (citation to the record omitted) (emphasis added).

We agree with the trial court's determination in this matter. Father's argument rests on an imposition of an earning capacity on Mother, while at the same time refusing to consider child care costs because Mother did not continue to work outside the home as a seventh grade English teacher. As recognized by the trial court, in determining earning capacity, the court is to consider "age, education, training, health, work experience, earnings history and child care responsibilities[.]" ***See id.*** at 5 (quoting Pa.R.C.P. 1910.16-2(d)(4)). Furthermore, Mother notes in her brief that the parties had agreed "that [] Child would attend school remotely to avoid exposure to the COVID-19 virus." Mother's brief at 14 (citing N.T., 10/8/2020, at 71-72). Additionally, the language in Pa.R.C.P. 1910.16-6(a) contains the word "shall," not "may," thus, making it mandatory to allocate the costs of child care between the parents in proportion to each parent's income. Thus, we conclude that based on Father's argument, he is due no relief.

Father's second argument centers on the retroactivity of the payment of the child care expenses. He contends that he filed the child support modification petition on February 14, 2020, but that Mother took the sabbatical for the 2020-2021 school year, which began on September 1, 2020.

Thus, Father asserts that Mother did not incur any child care expenses between February 14, 2020, and September 1, 2020, and that "the $1,639.22 charge was not warranted until Mother went on sabbatical. Father's brief at 10. In other words, Father contends that "[w]hile [Mother] was being paid and was not … incurring the $2,800 child care expenses, she had no reason to be paid $1,639.22. Father concludes that even if this Court affirms the trial court's decision relating to his first argument, we should remand the matter and instruct the trial court to give credit to Father for $1,639.22 times 6.5 months for a total of $10,654.93.

We disagree with Father's position and rely on the trial court's explanation given in response to this issue. Specifically, the trial court stated:

> Lastly, Father disputes the retroactivity of the matter to February 14, 2020. "An order modifying a prior support order is ordinarily retroactive to the date of filing of a petition for modification." **Albert v. Albert**, 707 A.2d 234 (Pa. Super. 1998). Pa.R.C.P. 1910.17(a) states that "an order of support shall be effective from the date of the filing of the complaint or petition for modification." The Superior Court has stated that orders modifying previous orders of support are retroactive from the date of filing unless specified otherwise. **Holcomb v. Holcomb**, 620 A.2d 1155, 1158 (Pa. Super. 1996). Here, Father filed the petition to modify the order on February 14, 2020. Because the court never specified otherwise that the modification was not retroactive, the modified support order is retroactive to February 14, 2020, when Father filed to modify the original support order.

TCO at 7. No request was presented to the hearing officer, prior to or at the hearing, relating to the retroactivity of the new support order. Accordingly, the trial court properly followed the dictates of case law cited above, and we

- 7 -

conclude that Father is not entitled to relief relating to his second issue.

Accordingly, we affirm the March 16, 2021 order from which Father appealed.

Order affirmed.

Judge Pellegrini joins this memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2022