J-A01008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE ANN WERLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH ANTONIO HERNANDEZ | : | No. 1706 EDA 2022 |

Appeal from the Order Entered March 31, 2022
In the Court of Common Pleas of Lehigh County Domestic Relations at
No(s):  DR-10-02209,
PACSES: 884112096

BEFORE:  LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED JANUARY 25, 2023**

Christine Ann Werley (Mother) appeals from the March 31, 2022, order by the Lehigh County Court of Common Pleas, denying her exceptions to the trial court's November 10, 2021, order, which directed Joseph Antonio Hernandez (Father) to pay child support in the amount of $595.68 per month for the one minor child (Child)[1] the parties share.  On appeal, Mother raises several claims: (1) the court failed to assign Father an earning capacity commensurate with his prior work experience; (2) the court failed to properly calculate Father's income for child support purposes; and (3) the court failed

_____

[1] Child was approximately 11 years old at the time of the underlying proceedings.

to properly calculate childcare expenses based on the record. For the following reasons, we affirm.

The parties were never married, and their relationship lasted only a couple of months. *See* N.T., 10/14/21, at 61, 63. Child was born in October of 2011. Following their separation, Mother filed a support action against Father. Both parties are self-employed: (1) Mother owns a massage business; and (2) Father is stonemason. On July 8, 2011, the court ordered Father to pay support in the amount of $1,706.00 per month.[2] Father did not appeal that decision. The support ordered remained relatively unchanged for the following ten years.

In February 2021, Mother filed a petition for contempt of the July 8th order, alleging Father was "inconsistent with his support obligation, and ha[d] notified Mother via email and/or text that he will pay support when she allow[ed] him to see the minor child." Mother's Petition for Contempt of Order Dated July 8, 2011, 2/5/21, at 1.

Subsequently, on March 18, 2021, Father filed a petition for modification of his support obligation due to his loss of income as a result of the Covid-19 pandemic. *See* Father's Petition for Modification of an Existing Support Order,

---

[2] The master determined that Father held an earning capacity of approximately $51,000 as an experienced mason. N.T., 9/13/21, at 49.

3/18/21, at 2. An interim order was entered on May 28, 2021, requiring Father to pay $1,445.95 per month. *See* Order of Court – Allocated, 5/28/21.[3]

Nevertheless, the parties were not able to reach an agreement with regard to Father's support obligation, and the matter was listed for a hearing before Hearing Officer Richard F. Betz. *See* Summary Report, 11/10/21 at 1. The parties appeared for three hearings that were conducted on August 5,

_____

[3] The *interim* order followed a support conference that was conducted the same day. The hearing officer, Errol Bott, issued a summary, in which he noted the following:

> [Mother] is self-employed with her own business. A Schedule C from 2019 was provided which shows a profit of $23,669.00. [Mother] also receive[d] earned income credit of $3,055.00 and child tax credit of $1,691.00. These shall be considered income for [her]. [Mother] stated she did not receive wages or compensation from her employment. [She] provided documentation stating that due to medical issues, child needs supervision. Medical personnel stated a need for child care, the child care costs shall be considered.
>
> [Father] is currently not employed. [Father] showed 2 statements of pay totaling $1,500.00, which he states represents the total income he has earned for 2021. [Father] provided limited income for 2020 as well doing masonry work. [He] provided very little information with respect to work sought and has not looked for any work outside of his field. It does not appear [Father] has attempted to mitigate any losses he may have had. [Father] shall be assessed an earning capacity. [He] was last assessed an earning capacity in 2011 by the Hearing Officer of $51,250. Per the Occupational Wage Guide for Masonry (47-2051) this assessment falls within the salary guides. As there has been no attempt to mitigate losses, Officer will not deviate from this assessment; as even though the assessment is over 10 years old, it still falls within the wage guide range.

Summary of Trier of Fact, 5/28/21, at 2-3.

2021, September 13, 2021, and October 14, 2021. *See id.* The findings of the Domestic Relations Conference Officer were admitted into evidence at the time of the proceedings. *See id.* at 1-2.[4] Mother made no objections, but Father disagreed with the calculation of his income. *See id.* at 2.

On November 10, 2021, the hearing officer entered a report, summarizing its findings. First, the officer pointed out the parties "are both self-employed individuals." Summary Report, 11/10/21, at 2. The officer explained the evidence presented at the hearings and his findings as follows:

> The Superior Court in the case of *Fennell v Fennell*, 753 A.2d 866 (Pa. Super. 2004) stated in relevant part, "[O]ur jurisprudence is clear, therefore, that the owner of a closely held corporation cannot avoid a support obligation by sheltering income that would be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts." *Id.* at 868. The Pennsylvania Supreme Court made it clear that income available for support is based upon cash flow in lieu of tax code adjustments in cases where a party is self-employed. *Labar v Labar*, 731 A.2d 1252 (Pa. [ ] 1999). The only way to accurately determine cash flow is to give the opposing party and the court an opportunity to review all expenditures used to off-set gross income. In that vein, an order was entered requiring [Father] to provide a copy of his most recently filed tax return along with all corresponding receipts utilized to off-set gross receipts. On the original hearing date, it became apparent that [Father] failed to comply with that order. As a result, the matter was rescheduled so that [Father] could comply.
>
> As it was not known that [Father] was going to challenge the calculation of [Mother]'s net monthly income until the second day of testimony, a corresponding self-employment order for [Mother] was not issued. Notwithstanding that fact, [Mother]'s

_____

[4] *See also* N.T., 8/5/21/ at 3.

- 4 -

counsel assured the court that she would comply with the same requirements contained in [Father]'s order.

[Mother] submitted a copy of her federal tax return, and corresponding documentation, for calendar years 2019 and 2020. The undersigned Hearing Officer used the 2020 federal tax return in order to calculate [Mother]'s income level.

For 2020, the undersigned Hearing Officer has been prorating the profit reported by self-employed individuals if their business was not open for the entire calendar year due to Covid. [Mother] credibly testified that her business was open throughout the entire calendar year. [Mother] did realize a reduction in business as a result of Covid nonetheless. On the 2020 federal tax return, [Mother] reported gross receipts of $58,512.00. [Mother] was able to confirm expenses for advertising in the amount of $3,083.17. [She] was unable to provide substantiating evidence to justify her deduction for a car and truck expense on Line 9 of the profit and loss schedule. As a result, this deduction will not be taken into consideration.

[Mother] provided sufficient documentation to confirm expenses related to a Section 179 deduction in the amount of $5,097.18. This will be taken into consideration.

[Mother] failed to provide any documentation to confirm the deduction which appears on Line 15, for insurance. As a result, it will not be included. On Line 18, office expenses, [she] was able to confirm expenses totaling $754.83. For Line 20b, rent, [Mother] was able to confirm expenses totaling $17,391.00. For Line 22, supplies, [she] was able to confirm expenses totaling $1,756.63. [She] took a deduction on Line 24b for meals. [Mother] failed to present any testimony to show that the expense was associated with the furtherance of her business. As a result, it was not included.

On Line 25, utilities, [Mother] was able to verify expenses from RCN[5] in the amount of $2,091.69. [She] also provided verification of a cell phone expense. [She] confirmed that she uses the phone for business and for personal use. The

_____

[5] RCN is a internet and phone provider. N.T., 10/14/21, at 29.

undersigned Hearing Officer will include $100.00 per month, for a total of $1,200.00 as the expense for the cell phone.

Under "other" [Mother] was able to verily a subcontractor's expense of $12,231.80. [She] was able to confirm an expense for electronics purchased during that calendar year in the amount of $559.94. [Mother] also took a deduction for uniforms/clothing. The undersigned Hearing Officer included the expense for the cleaning service of sheets but did not include the expense for clothing since the clothing purchased appears to have been normal clothing that could have been worn at any time either working, or at home. The expense permitted totaled $449.91. [Mother] took a deduction for what was identified as a website expense in the amount of $750.00. This will be included.

After deducting all of the expenses, in the amounts set forth above, from the gross receipts reported on [Mother]'s federal tax return, it leaves a remainder of $13,145.85. This is considered [her] income for calendar year 2020. [Mother] also received an earned income credit of $3,069.00 and a child tax credit of $978.00.

[Mother] also provided evidence that the minor child of this support matter requires psychological treatment. The undersigned Hearing Officer believes that it is appropriate to include the cost of psychological, or psychiatric treatment, as part of [Father]'s support obligation. [Father]'s contribution will be made in conformity with the division of unreimbursed medical expenses, to the extent that they are not covered by insurance.

[Mother] provided sufficient evidence to confirm that the child attended camp in calendar year 2021 at a cost of $255.00. This was a one-time expense. [Father]'s proportional share of this expense will be added to [Father]'s arrears balance.

[Mother] testified that she incurs a childcare expense. [Her] evidence with regard to this expense was lacking. [Mother] was vague with regard to the manner in which the childcare expense was determined. [She] testified that she would pay the childcare provider at the conclusion of each week of childcare service. [She] would write the childcare provider a check each week. [Mother]'s evidence was missing several weeks of checks. [She] attempted to explain this by indicating that the childcare provider did not have an opportunity to get to the bank to deposit the checks. A

close review of the evidence submitted by [Mother] clearly shows that the childcare provider, especially in recent weeks, has been depositing the checks utilizing her mobile phone. Using this method, the childcare provider would not have to leave her home. Therefore, [Mother]'s explanation fails.

From March 5, 2021 through the final hearing date on October 14, 2021, [Mother] was able to provide confirmation of childcare expenses totaling $4,300.00. This accumulated over a thirty-two (32) week period. This equates to an average weekly childcare expense of $134.38. [Father] will be required to contribute his proportional share of this expense.

[Father] in this matter is also self-employed. Although [he] completed a 2020 federal tax return[, Father] also confirmed that he was closed for a period of time in calendar year 2020. As indicated above, the undersigned Hearing Officer prorates profits for the calendar year to cover only the periods of time that the business was open. Unfortunately [Father] was unable to provide the undersigned Hearing Officer with clear information with regard to the period of time that he was closed. [Father] was extremely vague and unconvincing in his responses. Since [he] was unable to provide this information, the undersigned Hearing Officer utilized the 2019 federal tax return for [Father]. [He] reported gross receipts of $27,859.00. As indicated above, [Father] was ordered to provide receipts, or other documentation to confirm expenses associated with the deductions taken on the federal tax return. As part of that order, [Father] was to group the receipts to correspond with the deductions which appear on the tax return. In addition, each group of receipts was to include a summary page identifying each receipt, the date of the transaction, purpose of the transaction, and the amount of the transaction. [Father] failed to comply with this part of the order. Furthermore, [he] claimed ignorance with regard to the manner in which his tax return was completed. [Father] claim[ed] that he merely provided documentation to his accountant, and his accountant completed the federal tax return. As a result, [Father] was unable to determine what receipts went with which deduction.

It is also important to note that [Father] admitted that he received cash for the payment of some of the services that he provide[d]. Despite that fact, [he] was unable to identify the amount of cash that he received in calendar year 2019. [Father] also confirmed that he does not keep records of the amounts of

cash that he receives. It is also important to note that [his] Exhibits contained many duplicate receipts. Since there was no summary page for the receipt exhibits, the undersigned Hearing Officer went through each receipt individually. Included in [Father]'s Exhibit "3" were various receipts totaling $14,379.94.

Among those receipts was a single receipt in the amount of $10,271.40. [Father] acknowledged that this receipt is not for his business. [He] explained that he allows other contractors, or masons, to use his account when purchasing materials so that they can receive any discounts or price adjustments to which he is entitled. The fact that [Father] attempted to include this document as his own deduction is quite troubling and greatly undermines [his] credibility. The undersigned Hearing Officer will deduct that sum from the total of $14,379.94. This leaves a remainder of $4,108.54. This is the amount that will be taken into consideration to offset gross receipts.

[Father] supplied [Father]'s Exhibit "4". This exhibit included a single cell phone bill in the amount of $124.90. [Father] confirmed that he utilizes the cell phone for both business and personal use. As a result, half of the total will be included as a business expense. The undersigned Hearing Officer will include the sum of $62.45 to offset gross receipts for this expense. In [Father]'s Exhibit "5", [he] was able to confirm the expense for sub-contractors totaling $5,223.00. This will be taken into consideration as an offset to gross receipts.

Based upon the information above, [Father] was able to confirm business expenses totaling $9,393.99 over the 2019 calendar year. After deducting this from the gross receipts figure appearing on his federal tax return, it leaves a remainder of $18,465.01. This figure represents [Father]'s gross income for calendar year 2019.

Entering the findings of facts set forth above into the PACSES system, the PACSES system calculated [Mother]'s net monthly income to be $1,233.37 and calculated [Father]'s net monthly income to be $1,308.20. The PACSES system calculated [Father]'s basic support obligation to be $287.00. [His] contribution toward the childcare expense equates to $254.68 per month. This increases [his] monthly support obligation from $287.00 per month to $541.68 per month.

> [Father]'s net monthly income represents fifty-one (51%) percent of the parties' collective net monthly income figure. As a result, [Father] will be responsible to contribute fifty-one (51%) percent of the summer camp expense for 2021. That summer camp expense was confirmed to be $255.00. [Father]'s proportional share equates to $130.05. This amount will be added to [Father]'s arrears balance.

*Id.* at 2-8.

That same day, the court entered an order, which adopted the hearing officer's findings and directed Father to pay a total of $595.68 per month, which was allocated as follows: (1) $541.68 for current support; and (2) $54.00 for arrears.[6]  *See* Order of Court, 11/10/21, at 1-2.

Mother filed exceptions to the court's November 10th order, arguing that: (1) the hearing officer erred and abused his discretion in calculating Father's income for the purpose of calculating the child support obligation; (2) the officer erred and abused his discretion in failing to assign Father an earning capacity that was proportionate to his employment history; and (3) the officer erred and abused his discretion in calculating Mother's childcare expenses. *See* Mother's Exceptions to the Order dated, November 10, 2021, 11/23/21, at 1 (unpaginated).

---

[6] The obligation included cash medical support in the amount of $250.00 annually for unreimbursed medical expenses. *See* Order of Court, 11/10/21, at 2.

The court held a hearing regarding Mother's exceptions on January 12, 2022. Thereafter, on March 31, 2022, the court entered an order, denying Mother's exceptions. The court stated:

> As persuasive as [Mother]'s argument is, after review of the record, it does not appear to the Court that the Hearing Officer committed an error of law or abuse of discretion in calculating [Father]'s income or in failing to assign [Father] an earning capacity that is commensurate with his employment history. Under Pa.R.C.P. 1910-16-2(d)(4), if the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. This is not a mandatory provision, and it is within the trier of fact's discretion to determine whether a party has willfully failed to obtain or maintain appropriate employment which would support imputing an earning capacity. Further, the Hearing Officer did not commit an error of law or abuse of discretion in calculating [Mother]'s childcare expenses. The Hearing Officer found that [Mother]'s evidence with regard to childcare expense "was lacking" and that "[Mother] was vague with regard to the manner in which the childcare expense was determined." As such, after review of the record, the Hearing Officer did not abuse his discretion or commit an error of law in his calculation of the childcare expenses.

Order, 3/31/22, at 1 n.1 (unpaginated) (record citation omitted). This appeal followed.[7]

---

[7] The trial court points out that it entered the order denying Mother's exceptions on March 31st, but the order was not served on counsel for the parties until June 15, 2022. *See* Trial Ct. Op., 7/26/22, at 1. Such action constituted an apparent breakdown of the court's processes. Moreover, a Pa.R.C.P. 236 notice was never entered evincing that notice of entry of the March 31, 2022, order was given. Therefore, we will consider Mother's June 24, 2022, notice of appeal as timely filed. *See* Pa.R.A.P. 903(a) (providing notice of appeal "shall be filed within 30 days after the entry of order from which the appeal is taken"); Pa.R.A.P. 108(b) (date of entry of an order shall

*(Footnote Continued Next Page)*

Appellant raises the following issues on appeal:

A. Did the trial court err as a matter of law and abuse its discretion in failing to assign [Father] an earning capacity co[m]mensurate with his experience?

B. Did the trial court err as a matter of law and abuse its discretion in failing to properly calculate [Father]'s income for child support purposes?

C. Did the trial court err as a matter of law and abuse its discretion in failing to properly calculate child care expenses, based upon the evidence of record?

Mother's Brief at 4.

Based on the nature of Mother's claims, we will address her first two arguments together. Mother first alleges the trial court erred and abused its discretion by failing to assign Father an earning capacity that corresponded to his work experience. *See* Mother's Brief at 27. She states that he failed to produce certain documents, claimed ignorance regarding the manner in which his tax return was prepared, admitted to receiving cash for services but could not specify an exact amount, and threatened to stop paying child support unless Mother allowed him to see Child. *See id.* at 30-31. She notes Father did not provide any evidence or testimony about his inability to work, but testified that he was experienced as a stonemason and also worked as a painter. *Id.* at 31. Mother claims Father "failed to demonstrate a material

be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)).

and substantial change in circumstances required by Pa.R.C.P. 1910-19(c) and this Court's decision in" **Samii v. Samii**, 847 A.2d 691 (Pa. Super. 2004).[8] Mother's Brief at 33-34. Moreover, she contends he failed to present evidence as to how the Covid-19 pandemic affected his income or his inability to work. **See** Mother's Brief at 34. Mother maintains that because (a) the same Hearing Officer assessed Father's earning capacity in 2011, (b) he never appealed the decision, (c) he has been employed in the same trade since 2009, and (d) he has no health conditions that prevent him from working, he did not meet his burden in establishing a material change to his circumstances. **Id.** at 34, 37.

In Mother's second claim, she alleges that the court erred and abused its discretion in failing to properly calculate Father's income for child support purposes. Mother's Brief at 38. Mother suggests that Father filed his petition for modification after she filed her petition for contempt. **Id.** She reiterates her prior argument that Father could not provide testimony or documentation regarding the exact dates his business was operating in 2020, how the pandemic affected his income, and his inability to work during that time. **Id.** at 39. Mother contends that because Father failed to comply with the court

---

[8] We note that **Samii** is distinguishable from the present matter as it concerns a parent that voluntarily chose to stay home with the minor child. **See Samii**, 847 A.2d at 696. The case turned on whether to assess the parent an earning capacity when she placed herself in the "stay at home" situation. **Id.** at 697. Here, Father does not allege he is a stay-at-home parent and therefore, the request for modification is not based on his lack of employment.

orders and was extremely vague in his testimony was it was inexplicable that the hearing officer determined his gross income was only $18,456.01. *Id.* She submits the trial court "should have assessed Father with an earning capacity at least equivalent to an annual salary of $51,250.00, representing the prior assessment of the [c]ourt in 2011." *Id.* at 40.

Our standard of review of child support orders is well settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

We further note that

> [a]n award of support, once in effect, may be modified *via* petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification. *See* 23 Pa.C.S. § 4352(a); *see also* Pa.R.C.P. 1910.19. The burden of demonstrating a "material and substantial change" rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion.

*Summers v. Summers*, 35 A.3d 786, 788-89 (Pa. Super. 2012) (some citations omitted). "The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." *J.P.D. v. W.E.D.*, 114 A.3d 887, 889 (Pa. Super. 2015) (citation omitted)

In reviewing the calculation of a party's support obligations, this Court has held that:

> a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings.

**Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa. Super. 2004) (citations omitted). "[A] reviewing court does not weigh [earning capacity] evidence or determine credibility as these are functions of the trial court." **Doherty v. Doherty**, 859 A.2d 811, 812 (Pa. Super. 2004) (citation omitted).

Pursuant to Pa.R.C.P. 1910.16-2(a), monthly gross income "is ordinarily based on at least a six-month average of a party's income." **See** Pa.R.C.P. 1910.16-2(a).[9] In assessing whether a party's income should be reduced, Pa.R.C.P. 1910.16-2 provides:

> (d) **Reduced or Fluctuating Income**.
>
> (1) *Voluntary Reduction of Income*. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.
>
> (2) *Involuntary Reduction of, and Fluctuations in, Income*. No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off,

---

[9] 23 Pa.C.S. § 4302 defines "income" for support purposes, and includes income from any source.

termination, job elimination or **some other employment situation over which the party has no control** unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

\* \* \*

(4) *Earning Capacity.* If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact **may impute** to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.

Pa.R.C.P. 1910.16-2(d)(1), (2), (4) (emphases added). "[T]here is a rebuttable presumption that the guideline-calculated support amount is the correct support amount." Pa.R.C.P. 1910.16-1(d); *see also Ileiwat v. Labadi*, 233 A.3d 853, 860 (Pa. Super. 2020).[10]

Contrary to Mother's argument, the trial court is correct that Rule 1910.16-2(d)(4) does not mandate that if a trier of fact finds a party willfully failed to obtain or maintain appropriate employment, the trier-of-fact must impute to the party an income equal to the party's earning capacity. *See* Order, 3/31/22, at 1 n.1 (unpaginated). The Rule clearly states that the trier of fact **may** impute an income equal to the party's earning capacity. As such, it was up to the hearing officer's discretion to determine Father's gross

---

[10] This memorandum references the 2021 version of the support guidelines that were in place before the most recent amendments took effect on January 1, 2022.

income. It is evident that while the hearing officer, and imputably the trial court, found Father less than credible concerning his income, and his actions did not amount to a willful failure to obtain or maintain appropriate employment. *See* Pa.R.C.P. 1910.16-2(d)(4). Father did present testimony and evidence that his employment was adversely affected by the Covid-19 pandemic (*i.e.*, he could not work for two months), he did attempt various avenues to pursue employment, including becoming a painter at one point. N.T., 9/13/21, at 3-4, 35. Moreover, it also merits mention that the hearing officer extensively examined Father's 2019 and 2020 federal tax returns to ascertain his income and did not credit him with all his expenses. *See* Summary Report at 5-7. Nevertheless, the 2019 tax return did indicate a significate decrease in income ($18,456.01)[11] from the original 2011 assessment ($51,250).

To the extent that Mother asks us to reweigh certain factors — Father's long employment history as a mason and that he did not appeal the original 2011 support order — in her favor, we decline to do so. *See Doherty*, 859 A.2d at 812. Father demonstrated that he suffered a loss of income as a result of the Covid-19 pandemic, which he had no control over and which was a material and substantial change warranting a modification. *See* Pa.R.C.P. 1910.16-2(d). Accordingly, the court's findings and conclusions were

---

[11] *See* Summary Report at 7.

supported by the record, and we discern no error of law or abuse of discretion as to Mother's first two claims.

In Mother's third argument, she asserts the court erred and abused its discretion by failing to properly calculate the childcare expenses. *See* Mother's Brief at 41. Mother stated that because Child was diagnosed with several developmental disorders and needed to be continuously supervised, she had to employ a private babysitter. *Id.* at 41-42. Mother purportedly paid the babysitter $250 per week for 42 weeks, and $300 per week for ten weeks in the summer. *Id.* at 42. At the October 14, 2021, hearing, she introduced a number of checks into evidence that represented payments through August 27, 2021, but she had no record of the checks she made for the month of September. *Id.* at 43. She claims the hearing officer improperly calculated her childcare expenses on an 18-week period, not a 52-week period. *Id.* at 44. She concludes that the hearing officer's determination is contrary to the evidence and testimony she produced at the time of the hearing. *Id.*

Keep our standard of review in mind, we note the record belies Mother's assertions that she paid the babysitter for every week of the year. For example, Father's counsel asked Mother, "[S]o regardless of how many hours of daycare you get, you pay [the babysitter] $250 a week. Is that right?" N.T., 10/14/21, at 66. Mother replied in the affirmative. *Id.* Father's counsel then asked "if it's one hour you pay her $250[,]" to which Mother answered,

"No. . . . It doesn't go like that." *Id.* Father's counsel also pointed out there were checks missing from December 18, 2020 to January 22, 2021, in Mother's proffer of payment. *Id.* at 68. There were also no checks for the month of February 2021. *See id.* at 70. Mother testified, "I provided all of the checks. If they're not here, I don't know where they are. But I provided all of the checks for an entire year." *Id.*

Just like Father, the hearing officer found Mother's evidence of childcare expenses to be "lacking" and "vague." *See* Summary Report at 5. We are bound by its credibility determinations. *See Doherty*, *supra*. We discern no error on the hearing officer's calculation as it was based on Mother providing "confirmation of childcare expenses totaling $4,300.00" for the period of March 5, 2021, to October 14, 2021 — a 32-week period. Summary Report at 5. Without more evidence from Mother regarding payments, we conclude she has failed to establish an error of law or abuse of discretion in the trial court's decision to reject her request to recalculate these expenses. As such, Mother's final claim has no merit.[12]

Order affirmed.

---

[12] We note that as the parties transition to a post-pandemic environment where their earning capacities may change again, there is no rule barring a party from filing another petition for modification, as long as it is warranted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/25/2023</u>